**Samuel L. PFANNSTIEL, et al., Plaintiffs–Appellees,**

v.

**CITY OF MARION, et al., Defendants,**

**Doyle Elliot and James A. Pearce, Mike Earl, Harvey Faulkner and Waldon Boecker, etc., Defendants–Appellants.**

No. 89–5619.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1990.

W. Reed Lockhoof, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellants.

Douglas M. Becker, Gray & Becker, Austin, Tex., for Earl, Faulkner & Boecker.

Dan R. Rutherford, San Antonio, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, REAVLEY and KING, Circuit Judges.

CLARK, Chief Judge:

This civil rights action arises out of incidents that occurred in Marion, Texas on July 31, 1985. Plaintiffs Samuel Pfannstiel ("Pfannstiel"), David Vizza, Roy Vizza, and Victor Garza, Jr. ("Garza") sued Michael

Earl ("Earl"), Harvey Faulkner ("Faulkner"); Waldon Boecker ("Boecker"), Doyle Elliot ("Elliot"), James Pearce ("Pearce"), P.L. Montgomery ("Montgomery"), J. Sam Smelser ("Smelser"), R.W. Skelton ("Skelton"), J.M. Simons ("Simons"), the City of Marion, Texas, Southern Pacific Transportation Company, Inc. ("the Railroad"), and the Texas Alcoholic Beverage Commission ("TABC") alleging violations of 42 U.S.C. § 1983. Earl is the Chief of Police of Marion, and Faulkner and Boecker are Marion police officers. Elliot is Assistant Supervisor of TABC, and Pearce, Montgomery, and Smelser are TABC agents. Skelton and Simons are security officers employed by the Railroad.

The district court dismissed plaintiffs' complaints against Smelser and Montgomery under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The district court also dismissed TABC based on Eleventh Amendment Immunity. All remaining defendants filed motions for summary judgment. The district court granted the summary judgment motion filed by Skelton, Simons, and the Railroad against David Vizza, but denied all other motions. Earl, Faulkner, Boecker, Elliot, and Pearce appeal the district court's denial of their motions for summary judgment based on qualified immunity. As to these defendants, we reverse.

## I. Background Facts.

The incidents in question occurred on and around a vacant tract of land in Marion known as "the Lot." The Railroad owns this gravel and dirt area located between the railroad tracks and the main street of Marion which is also a state highway. During the day, customers of businesses located across the main street use the Lot for parking. In the evenings, especially after Marion's weekly Wednesday night rodeo, people congregate and socialize at the Lot. From time to time, Marion officials have received complaints that underage persons consume alcohol at the Lot and that persons congregating there throw bottles and rocks at passing trains and commit vehicular violations.

On the evening of July 31, a group of between thirty and sixty people were socializing at the Lot, and many had been drinking beer. A "No Trespassing" sign had been posted before they arrived. Chief of Police Earl, several police officers, TABC representatives, and the Railroad's agents approached the group, announced that the Lot was private property, and asked the group to leave. Plaintiff David Vizza, who was seated in a chair, requested identification from the officials and protested that the Lot had always been used for socializing. David Vizza was subsequently pulled out of his chair and arrested for criminal trespass.

Plaintiff Roy Vizza became upset upon seeing his brother arrested, and he expressed his feelings to the officials. He was instructed to leave the Lot, but he moved to the center of the highway and continued to express his feelings. He claims that several officers brandished their weapons at him and shouted "get him." Roy Vizza then ran from the street and the officers ran after him. The officers eventually caught and arrested him in an alley.

Plaintiff Pfannstiel heard that the officers had chased Roy Vizza into the alley, and he decided to investigate the situation. As he approached the area where Roy Vizza was being arrested, defendant Elliot ordered Pfannstiel to leave the area and words were exchanged. Pfannstiel eventually proceeded toward the Lot. He claims that Elliot followed him on his right and Earl followed on his left. Earl and Elliot claim that Pfannstiel followed them. Pfannstiel claims that Earl "backhanded" him across the face without reason and explained that he was swatting a fly. Pfannstiel asked Skelton why he was being forced to vacate the Lot, told Skelton that the Lot had been used for socializing for years, discussed the "No Trespassing" sign, and exchanged words with Skelton. At this point, Garza had arrived on the scene. Pfannstiel spoke to him about the events which were taking place. Pfannstiel turned from speaking to Garza and confronted Marion police officers. Earl and

Pearce put Pfannstiel in a headlock and placed him under arrest.

While Earl and Pearce were arresting Pfannstiel, plaintiff Garza confronted the arresting officers and words ensued. Pearce and others arrested Garza and put him in a police vehicle with Pfannstiel. Earl then drove the vehicle to the Guadalupe County jail. Pfannstiel and Garza claim that Earl drove the vehicle at approximately seventy miles per hour and applied the brakes suddenly and without reason. The sudden braking caused Pfannstiel, who was sitting forward on the rear seat, to strike his face against the metal screen separating the front and rear seats. Pearce and Montgomery transported Roy Vizza to the Guadalupe County jail, and Smelser transported David Vizza there.

Upon arrival, Pfannstiel, Garza, and Roy Vizza claimed that they were injured and requested medical attention. The requests were denied. Pfannstiel, Garza, Roy Vizza, and David Vizza were released after posting bond approximately three hours later. Upon release, all four plaintiffs went to the hospital, but David Vizza felt that he did not need medical attention.

All four plaintiffs claim that the defendants violated section 1983 by: (1) falsely arresting them, (2) using excessive force, (3) denying them medical care, and (4) conspiring to violate their civil rights.

## II. Qualified Immunity.

### A. Jurisdiction.

■ Generally, only final judgments of the district court are appealable. *See* 28 U.S.C. § 1291. The Supreme Court has held, however, that an order denying a motion for summary judgment based on a qualified immunity claim is immediately appealable under the collateral order doctrine "to the extent that it turns on an issue of law." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Plaintiffs argue that this court lacks jurisdiction over this appeal because it contains disputed factual issues material to immunity. They cite *Feagley v. Waddill,* 868 F.2d 1437 (5th Cir.1989) wherein we stated that "if disputed factual issues

material to immunity are present, the district court's denial of summary judgment sought on the basis of immunity is not appealable." *Id.* at 1439. The district court here denied the defendants' motions for summary judgment because plaintiffs alleged that defendants acted with intent to injure. The district court reasoned that this allegation raised a disputed issue of material fact. We disagree.

To maintain the strict limits of interlocutory appealability, the disputed fact issue must be material to the defendants' qualified immunity claims. In *Feagley,* parents of an involuntarily committed child brought a wrongful death action against state school officials who claimed qualified immunity. The school officials argued that their conduct was merely negligent. The district court denied the defendants' motions for summary judgment. We held that the order was not appealable because the defense of negligence raised a material issue of fact—the defendants' scienter. *See id.* at 1441–42.

In today's case, however, scienter is not material to qualified immunity. In cases involving intentional conduct by public officials, the Supreme Court has eliminated the subjective component of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The appropriate standard for determining qualified immunity is "the objective reasonableness of an official's conduct, as measured by reference to clearly established law...." *Id.* Thus, the Supreme Court has held that "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). It is therefore irrelevant whether the defendants in this case acted with intent to injure as long as their conduct was objectively reasonable. The district court erroneously applied a subjective standard to the qualified immunity issue.

### B. Legal standards.

All of the defendants who appeal are public safety officials who are entitled to

assert the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir.1986), *cert denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The qualified immunity defense has two primary effects. Procedurally, it allows defendants to appeal interlocutory orders which deny motions for dismissal or summary judgment that raise the defense. The rationale for permitting such interlocutory appeals is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ Substantively, qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In *Anderson*, the Supreme Court clarified the test for qualified immunity enunciated in *Harlow*. Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law. *See id.* 483 U.S. at 639, 107 S.Ct. at 3038. The Court explained that when a plaintiff invokes a clearly established right such as due process, the appropriate inquiry is whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Id.* at 640, 107 S.Ct. at 3039. If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *See Malley*, 475 U.S. at 341, 106 S.Ct. at 1096. Thus, even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *See Melear v. Spears*, 862 F.2d 1177, 1188 (5th Cir.1989) (Higginbotham, J., concurring).

■ When a defendant raises a qualified immunity defense, "whether the conduct of which the plaintiff complains violated clearly established law" is an "essentially legal question." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. On appeal from an order denying a motion for summary judgment based on qualified immunity, we review the evidence in the light most favorable to the nonmovant, but the plaintiff has the burden to come forward with summary judgment evidence sufficient to create a genuine issue as to whether the defendant's conduct was objectively unreasonable in light of clearly established law. *See id.*

### III. Section 1983 claims.

#### A. False arrest.

■ Probable cause is a defense to a § 1983 claim based on an alleged false arrest. *Howell v. Tanner*, 650 F.2d 610, 614 (5th Cir. Unit B July 1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982). Even if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense. *See Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir.1982). A defendant is entitled to qualified immunity unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue . . . ." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096.

#### i) Pfannstiel.

■ Pfannstiel argues that the defendants lacked probable cause to arrest him for criminal trespass because trespass had occurred on the Lot for years and because he was arrested on a public highway. We need not resolve these issues because the defendants had probable cause to arrest Pfannstiel for disorderly conduct. The summary judgment evidence reflects without dispute that Pfannstiel repeatedly questioned the authority of the officers in a loud and abusive manner and that he was convicted of disorderly conduct in the City of Marion Municipal Court on September 10, 1985. Absent a showing of fraud, perjury, or corrupt means, the fact that Pfannstiel was convicted may be sufficient to show that the defendants acted in an

objectively reasonable manner by arresting him. *Cf. Howell,* 650 F.2d at 615 n. 6 (discussing effect of subsequent conviction on a probable cause inquiry).

ii) David Vizza.

David Vizza was arrested on the Lot. He also claims that the defendants lacked probable cause to arrest him because the Lot had been used for socializing for years. David Vizza repeatedly questioned the authority of the officers and refused to move from his chair. He was also convicted of disorderly conduct. The defendants acted in an objectively reasonable manner in arresting him.

iii) Roy Vizza.

■ Roy Vizza confronted the peace officers as they were arresting his brother David, and he admits that he was upset although he disagrees with the defendants' accounts of what he said. After being asked to vacate the lot, he moved to the middle of the highway and continued to express his feelings. He does not deny that he refused to desist when requested to do so by a known peace officer. Finally, when officers moved toward him he took flight.

Roy Vizza was acquitted of disorderly conduct. His subsequent acquittal does not establish lack of probable cause, *see id.* at 615, and therefore does not establish that it would have been objectively unreasonable to believe that the defendants had probable cause to arrest him.

When viewed in the light most favorable to Roy Vizza, the summary judgment evidence reflects that an objectively reasonable police officer could have concluded that probable cause existed to arrest him for disorderly conduct under Tex.Penal Code Ann. § 42.01 (Vernon 1989) and obstructing a highway by refusing a known peace officer's request to move under Tex. Penal Code Ann. § 42.03(a)(2) (Vernon 1989). Additionally, his flight from the scene could have suggested probable cause to a reasonable officer. *See United States v. Costner,* 646 F.2d 234, 236 (5th Cir. Unit A May 1981) (per curiam).

Roy Vizza claims that he ran from the scene because he saw guns drawn and was afraid of the officers. His subjective belief is irrelevant. Qualified immunity is concerned only with the objective reasonableness of the officer's actions. *See Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738.

iv) Garza.

Garza intervened while Earl and Pearce were arresting Pfannstiel. Like Roy Vizza, Garza was acquitted of disorderly conduct. Garza's acquittal, like Roy Vizza's, does not establish lack of probable cause, *see Howell,* 650 F.2d at 615, or lack of objective reasonableness. The evidence is not controverted that he used profanity and ignored several requests to move away so that the officers could complete the arrest of Pfannstiel. Defendants argue that they had probable cause to arrest Garza for disorderly conduct under Tex. Penal Code Ann. § 42.01 (Vernon 1989). Under the circumstances, an objectively reasonable police officer could have concluded that the defendants had probable cause to arrest Garza.

B. Excessive Force.

■ All plaintiffs claim that the defendants used excessive force in arresting them. A defendant is entitled to qualified immunity against a use-of-excessive-force-to-arrest claim when the defendant's conduct was objectively reasonable in light of clearly established law at the time of the defendant's conduct. *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. The parties in this case urge us to consider the objective reasonableness of the defendants' conduct in light of the three requirements for excessive force enunciated in *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc) (per curiam). In *Johnson,* we held that a use-of-excessive-force-to-arrest plaintiff must prove each of the following elements: "(1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Id.* at 480 (footnote omitted).

We hold, however, that the *Johnson* requirements do not govern this appeal. For qualified immunity purposes, the Supreme Court has clearly stated that the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *See Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. The reason for this rule is that "an official could not reasonably be expected to anticipate subsequent legal developments...." *Id.* at 818, 102 S.Ct. at 2738. We decided *Johnson* in 1989, but the conduct in this case occurred in 1985. At the time of the defendants' conduct, *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. Unit A Jan.1981) was clearly established law.

In *Shillingford*, we held that a § 1983 case could be maintained "[i]f the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience...." *Id.* at 265. In this case, therefore, our inquiry is whether the defendants' conduct was objectively reasonable in light of *Shillingford*. In other words, the defendants are entitled to qualified immunity if a reasonable peace officer could conclude that the defendants did not violate the plaintiffs' right to be free from excessive force as that right was understood in 1985.

In *Shillingford*, we recognized that not all injuries rise to the level of constitutional violations. *See id.* A plaintiff's injuries were required to be "severe" in order to be actionable under section 1983. *See id.* In order to avoid summary judgment based on qualified immunity, the plaintiffs in this case must come forward with summary judgment evidence sufficient to raise a genuine issue as to whether their injuries were objectively "severe" enough to constitute a violation of section 1983 under *Shillingford*.

"Severe injury" is an imprecise term, but it represents a higher standard than "significant injury" under current law. *See*

*Johnson*, 876 F.2d at 480. As of 1985, we had held that the following injuries could be considered "severe": partial paralysis from the chest down resulting from a gun shot wound in the neck, *see Languirand v. Hayden*, 717 F.2d 220, 222 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), multiple bruises and scars to the head and body resulting from a severe beating, *see Roberts v. Marino*, 656 F.2d 1112, 1115 (5th Cir. Unit A Sept.1981), and a lacerated forehead sustained when a policeman smashed a camera with a nightstick while the photographer was taking a picture. *See Shillingford*, 634 F.2d at 266. On the other hand, we had held that the following injuries were not "severe": slaps to the face that caused no bleeding and did not knock the plaintiff down, *see Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985), and minor bruises on the arm, scrapes on the face, and welts raised by handcuffs. *See Raley v. Fraser*, 747 F.2d 287, 289 (5th Cir.1984). We now turn to claims asserted by each plaintiff.

i) Pfannstiel.

Pfannstiel claims several injuries. He states that Earl slapped his face with the back of his hand. Such an injury is not severe. *Mark, supra.* He claims that Earl, Pearce, and others jerked his arms behind his back and threw him to the ground, and that Pearce placed him in a headlock and began choking him. Pfannstiel does not claim that these actions caused visible or objectively verifiable injuries. He does claim that they resulted in a "strained" neck which caused him some pain. He states that he saw a doctor who gave him a soft foam rubber collar to wear but did not prescribe medication. Pfannstiel wore the collar for about a week, and he did not go to work during the two days following the incident. Approximately a week after the incident, Pfannstiel saw a specialist who stated that Pfannstiel was not seriously injured. Under the facts of this use-of-excessive-force-to-arrest case, Pfannstiel's neck strain does not amount to an injury of constitutional severity.

Finally, Pfannstiel claims that Earl's sudden application of the police car's brakes caused his face to strike the metal screen. Pfannstiel admits that he did not sustain any scars and that his face did not bleed. This injury also was not severe.

#### ii) David Vizza.

David Vizza has not demonstrated any severe injury. At the time of the incident, he stated that he did not think he needed medical attention. The district court held that he had not even suffered a "significant" injury. We agree.

#### iii) Roy Vizza.

■ Roy Vizza claims that several law enforcement officers punched, kicked, and threw him to the ground after they caught up with him. He states that he received several scratches on his arms and that his throat hurt from being choked. After his release, he went to the hospital, but the doctors simply cleaned the scratches. Roy Vizza has not demonstrated a severe injury.

#### iv) Garza.

■ Garza claims that the sight of his friends being treated roughly by the police aggravated his pre-existing high blood pressure which resulted in chest pains. He also states that the handcuffs hurt his wrists and left "marks" on them. At the hospital, a doctor prescribed medicine for his blood pressure, and Garza asked to go home. Garza has not demonstrated a severe injury.

### C. *Denial of medical care.*

■ All plaintiffs claim that they were denied adequate medical care. Such claims by pretrial detainees allege deprivations of due process under the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). The defense of qualified immunity is a bar to denial of medical care claims unless the plaintiffs demonstrate that the defendants' conduct was objectively unreasonable in light of clearly established law

as of 1985. *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038.

In *Bell,* the Supreme Court held that the appropriate Fourteenth Amendment inquiry in cases involving pretrial detainees is whether the conditions of detention amount to punishment. *See Bell* at 535, 99 S.Ct. at 1872. In *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), we held that pretrial detainees are entitled "to reasonable medical care unless the failure to supply it is reasonably related to a legitimate government objective." *Id.* at 1378. Thus, our inquiry is whether the denial of medical care in this case was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees. We hold that the defendants' conduct was objectively reasonable as to each plaintiff.

#### i) Pfannstiel.

■ Pfannstiel claims that the defendants should not have denied him immediate medical treatment for his strained neck. He was released from jail after approximately three hours. He promptly went to a hospital, acquired a foam rubber collar, and went home. Given the nature of Pfannstiel's injury and the duration of his detention, the defendants' denial of Pfannstiel's request that he be released from custody before processing was complete to go to the hospital was not objectively unreasonable.

#### ii) David Vizza.

David Vizza neither requested nor demonstrated that he needed medical attention. The defendants did not deny him medical attention.

#### iii) Roy Vizza.

■ Roy Vizza claims that the defendants should have allowed him to go to the hospital immediately. He was released after approximately three hours. He went to the hospital, got his scratches cleaned, and went home. Given the nature of his inju-

ries and the duration of his detention, the denial of his request to go to the hospital was not objectively unreasonable.

iv) Garza.

█ Garza claims that the defendants should have allowed him to go to the hospital because of his blood pressure. He was released after three hours. He went to the hospital, received medical attention, obtained a prescription for his high blood pressure, and was given permission to go home. He has not alleged that the three hour delay caused any complications. The defendants' actions were objectively reasonable as to Garza.

### D. *Conspiracy.*

All plaintiffs claim that all defendants conspired to deprive them of their civil rights. We have recognized that section 1983 plaintiffs may assert conspiracy claims. *See Mizell v. North Broward Hospital Dist.*, 427 F.2d 468, 472–73 (5th Cir. 1970). A conspiracy by itself, however, is not actionable under section 1983. In *Nesmith v. Alford*, 318 F.2d 110 (5th Cir.1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964), we stated: "Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act." *Id.* at 126. Thus, a conspiracy claim is not actionable without an actual violation of section 1983. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.1960), *cert. denied*, 366 U.S. 955, 81 S.Ct. 1905, 6 L.Ed.2d 1247 (1961).

█ In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. This appeal requires us to consider the legal effect of qualified immunity in the conspiracy context. Specifically, we must determine whether defendants who are entitled to assert qualified immunity may be personally liable based on a section 1983 conspiracy theory when the state action alleged to have violated section 1983 has been determined to be objectively reasonable in light of clearly established law.

The defense of qualified immunity exists to protect an officer whose law enforcement actions were objectively reasonable. The protection granted extends to freedom from the expense of extensive fact development or trial as well as from a personal judgment for damages. *See Mitchell*, 472 U.S. at 525–26, 105 S.Ct. at 2815. In a section 1983 action claiming that plaintiff was injured by state action as the result of a conspiracy which includes private persons, the defense is still available to the qualifiedly immune actor. Yet, if a court must always consider whether a conspiracy might have been formed, the officer will face fact development or trial even where the official action was objectively reasonable. Such a consequence carries the potential for destroying the efficacy of the defense.

To avoid this consequence, our analysis of the denial of a motion to dismiss or summary judgment must look first to determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff. Only if that state action is determined not to be objectively reasonable should we look to whether the officer's actions were taken pursuant to a conspiracy. This procedure accords with Supreme Court's holding that even an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable. *See Malley*, 475 U.S. at 341, 106 S.Ct. at 1096.

Following such a procedure both insures that the defense of qualified immunity is given full meaning, and that the right of plaintiff to be compensated for damage caused by any official action which a reasonable officer would not have taken is preserved.

█ The complaint contains a detailed description of the events of the evening of plaintiff's arrest and detention. While it charged that defendants had a "vendetta" against plaintiff Pfannstiel, it did not claim that defendants agreed or conspired to violate plaintiffs' rights by the actions described. The district court denied summa-

ry judgment to defendants because, among other things, the court found that the record contained disputed issues of fact as to whether a conspiracy existed. Plaintiffs' brief asserts that the officers' actions were the result of a conspiracy. They point to affidavits and deposition testimony in the summary judgment record which could provide circumstantial evidence of an agreement to harass Pfannstiel, which was extended to the other plaintiffs. If we were to reach the issue of whether the asserted conspiracy to harass and harm plaintiffs on the evening in question existed, we would agree with the district court that summary judgment would be improper because the agreement was disputed.

However, no dispute exists in the record as to the objective reasonableness of the actions taken by the defendant officers who now appeal. Each state action alleged to have harmed plaintiffs—false arrest, excessive force and denial of medical attention—has been determined to be qualifiedly immune. Assuming that the complaint properly pleaded a conspiracy between private and public actors, every state action resulting from that conspiracy which is asserted to have caused harm to the plaintiffs was objectively reasonable and therefore qualifiedly immune. This being so, we need not reach the issue of whether a conspiracy existed to engage in such actions. Our jurisdiction on this special interlocutory appeal is limited to the officers' entitlement to claim immunity. Extending our examination past the actions which were alleged to have harmed the plaintiffs to inquire into motive, actual intent, or agreement to harm would be improper.

The district court's denial of summary judgment is reversed and judgment is entered here dismissing the complaint with prejudice as to all appealing defendants.

REVERSED. Judgment here for Appellants.

REAVLEY, Circuit Judge, concurs in the result.