**Samuel L. PFANNSTIEL, et al., Plaintiffs,**

v.

**CITY OF MARION, TEXAS, et al., Defendants.**

**Civ. A. No. SA–86–CA–439.**

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 12, 1991.

**602**

Daniel R. Rutherford, Law Offices of Dan Rutherford, San Antonio, Tex., for plaintiffs.

Douglas M. Becker, Gray & Becker, Austin, Tex., for defendants W. Becker, Mike Earl, Harvey Faulkner, City of Marion and P.L. Montgomery.

W. Reed Lockhoof, Atty. General's Office, Austin, Tex., for defendant James A. Pearce.

Richard C. Danysh, Matthews & Branscomb, San Antonio, Tex., for defendants J.M. Simons, R.N. Skelton, Sam J. Smelser and Southern Pacific R.R.

W. Reed Lockhoof, San Antonio, Tex., for defendants Texas Alcoholic Beverage Com'n and Doyle Elliot.

## ORDER

PRADO, District Judge.

On this date came on to be considered the status of the above-styled and numbered cause.

This civil rights action arose out of incidents that occurred in Marion, Texas on July 31, 1985. Plaintiffs Samuel Pfannstiel ("Pfannstiel"), David Vizza, Roy Vizza, and Victor Garza, Jr. ("Garza") sued Michael Earl ("Earl"), Harvey Faulkner, ("Faulkner"), Waldon Boecker ("Boecker"), Doyle Elliot ("Elliot"), James Pearce ("Pearce"), P.L. Montgomery ("Montgomery"), J. Sam Smelser ("Smelser"), R.W. Skelton ("Skelton"), J.M. Simons ("Simons"), the City of Marion, Texas, Southern Pacific Transportation Company, Inc. ("the Railroad"), and the Texas Alcoholic Beverage Commission ("TABC") alleging violations of 42 U.S.C. § 1983. Earl is the Chief of Police of Mar-

ion, and Faulkner and Boecker are Marion police officers. Elliot is Assistant Supervisor of TABC, and Pearce, Montgomery, and Smelser are TABC agents. Skelton and Simons are security officers employed by the Railroad.

This Court previously dismissed plaintiffs' complaints against Smelser and Montgomery under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This Court also dismissed TABC based on Eleventh Amendment immunity. All remaining defendants filed motions for summary judgment; this Court granted the summary judgment motion filed by Skelton, Simons, and the Railroad against David Vizza, but denied all other motions. Earl, Faulkner, Boecker, Elliot, and Pearce appealed this Court's denial of their motions for summary judgment based on qualified immunity. As to these defendants, the Fifth Circuit reversed and rendered judgment. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1188 (5th Cir.1990). Still remaining in this case, however, are the claims of David Vizza against the City of Marion, as well as the claims of Roy Vizza, Pfannstiel, and Garza against the City of Marion, Skelton, Simons, and the Railroad.

### I. Law of the Case

The "law of the case" doctrine holds that an appellate court decision rendered at one stage of a case constitutes the "law of the case" in all succeeding stages. *Young v. Herring*, 917 F.2d 858, 861 (5th Cir.1990); *Knotts v. United States*, 893 F.2d 758, 761 (5th Cir.1990). The doctrine "operates to foreclose reexamination of decided issues either on remand or on a subsequent appeal." *Young*, 917 F.2d at 861; *Pegues v. Morehouse Parish School Bd.*, 706 F.2d 735, 738 (5th Cir.1983). The scope of the doctrine, however, is limited: it "applies only to issues that were decided in the former proceeding and does not pertain [to] questions that might have been decided but were not." *Young*, 917 F.2d at 861; *Knotts*, 893 F.2d at 761 (quoting *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir.1978)). The doctrine encom-

passes those issues decided by "*necessary implication*" as well as those decided explicitly. *Id.* The doctrine, however, also recognizes three exceptions:

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishe[s] the law of the case and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*Young*, 917 F.2d at 862 (quoting *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967)). This Court notes that the "law of the case" doctrine applies to the case *sub judice*.

## II.  Background Facts [1]

The incidents in question occurred on and around a vacant tract of land in Marion known as "the Lot." The Railroad owns this gravel and dirt area located between the railroad tracks and the main street of Marion which is also a state highway. During the day, customers of businesses located across the main street use the Lot for parking. In the evenings, especially after Marion's weekly Wednesday night rodeo, people congregate and socialize at the Lot. From time to time, Marion officials have received complaints that underage persons consume alcohol at the Lot and that persons congregating there throw bottles and rocks at passing trains and commit vehicular violations.

On the evening of July 31, a group of between thirty and sixty people were socializing at the Lot, and many had been drinking beer. A "No Trespassing" sign had been posted before they arrived. Chief of Police Earl, several police officers, TABC representatives, and the Railroad's agents approached the group, announced that the Lot was private property, and asked the group to leave. Plaintiff David Vizza, who was seated in a chair, requested identification from the officials and protested that the Lot had always been used for socializing. David Vizza was subsequently pulled out of his chair and arrested for criminal trespass.

Plaintiff Roy Vizza became upset upon seeing his brother arrested, and he expressed his feelings to the officials. He was instructed to leave the Lot, but he moved to the center of the highway and continued to express his feelings. He claims that several officers brandished their weapons at him and shouted "get him." Roy Vizza then ran from the street and the officers ran after him. The officers eventually caught and arrested him in an alley. Plaintiff Pfannstiel heard that the officers had chased Roy Vizza into the alley, and he decided to investigate the situation. As he approached the area where Roy Vizza was being arrested, defendant Elliot ordered Pfannstiel to leave the area and words were exchanged. Pfannstiel eventually proceeded toward the Lot. He claims that Elliot followed him on his right and Earl followed on his left. Earl and Elliot claim that Pfannstiel followed them. Pfannstiel claims that Earl "backhanded" him across the face without reason and explained that he was swatting a fly. Pfannstiel asked Skelton why he was being forced to vacate the Lot, told Skelton that the Lot had been used for socializing for years, discussed the "No Trespassing" sign, and exchanged words with Skelton. At this point, Garza had arrived on the scene. Pfannstiel spoke to him about the events which were taking place. Pfannstiel turned from speaking to Garza and confronted Marion police officers. Earl and Pearce put Pfannstiel in a headlock and placed him under arrest.

While Earl and Pearce were arresting Pfannstiel, plaintiff Garza confronted the arresting officers and words ensued. Pearce and others arrested Garza and put

---

**1.** Pursuant to the "law of the case" doctrine discussed above, the following factual narrative is culled from the Fifth Circuit's opinion in

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1181–82 (5th Cir.1990).

him in a police vehicle with Pfannstiel. Earl then drove the vehicle to the Guadalupe County jail. Pfannstiel and Garza claim that Earl drove the vehicle at approximately seventy miles per hour and applied the brakes suddenly and without reason. The sudden braking caused Pfannstiel, who was sitting forward on the rear seat, to strike his face against the metal screen separating the front and rear seats. Pearce and Montgomery transported Roy Vizza to the Guadalupe County jail, and Smelser transported David Vizza there.

Upon arrival, Pfannstiel, Garza, and Roy Vizza claimed that they were injured and requested medical attention. The requests were denied. Pfannstiel, Garza, Roy Vizza, and David Vizza were released after posting bond approximately three hours later. Upon release, all four plaintiffs went to the hospital, but David Vizza felt that he did not need medical attention.

## III. The Fifth Circuit's Rulings

All four plaintiffs claim that the defendants violated section 1983 by: (1) falsely arresting them, (2) using excessive force, (3) denying them medical care, and (4) conspiring to violate their civil rights. On appeal, the Fifth Circuit rendered judgment for Earl, Faulkner, Boecker, Elliot, and Pearce based on the qualified immunity doctrine.

### A. The Section 1983 Claims

*1. False arrest.*—The Fifth Circuit ruled that the defendants acted in an objectively reasonable manner and had probable cause to arrest Pfannstiel, David Vizza, Roy Vizza, and Garza for disorderly conduct. *Pfannstiel*, 918 F.2d at 1183–84. The appellate court indicated that the acquittal of Roy Vizza and Garza of disorderly conduct did not establish lack of probable cause. *Id.* at 1184.

*2. Excessive force.*—All plaintiffs claim that the defendants used excessive force in arresting them. On appeal the Fifth Circuit assessed whether the plaintiffs had

demonstrated that their injuries were "severe" within the meaning of § 1983 as discussed in *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. Unit A Jan. 1981). The appellate court held that none of the plaintiffs had established a "severe" injury for purposes of an actionable § 1983 claim. *Pfannstiel*, 918 F.2d at 1185–86.

*3. Denial of medical care.*—All plaintiffs claim that they were denied adequate medical care. The Fifth Circuit noted that such claims by pretrial detainees allege deprivations of due process under the Fourteenth Amendment and *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). After examining the relevant § 1983 benchmarks, the Fifth Circuit found (1) that defendants' denial of Pfannstiel's request that he be released from custody before processing was complete to go to the hospital was not objectively unreasonable; (2) that the defendants did not deny David Vizza medical attention; (3) that the denial of Roy Vizza's request to go to the hospital was not objectively unreasonable, given the nature of his injuries and the duration of his detention; and (4) that the defendants' actions were objectively reasonable as to Garza. *Pfannstiel*, 918 F.2d at 1185–86.

*4. Conspiracy.*—All plaintiffs claim that all defendants conspired to deprive them of their civil rights. In assessing these claims, the Fifth Circuit noted that section 1983 plaintiffs may assert conspiracy claims. *Id.* at 1187 (citing *Mizell v. North Broward Hospital Dist.*, 427 F.2d 468, 472–73 (5th Cir.1970)). A conspiracy by itself, however, is not actionable under section 1983. *Pfannstiel*, 918 F.2d at 1187. The appellate court also held that a conspiracy claim is not actionable without an actual violation of section 1983. *Id.* (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.1960), *cert. denied*, 366 U.S. 955, 81 S.Ct. 1905, 6 L.Ed.2d 1247 (1961)). Even assuming that the complaint properly pleaded a conspiracy between private and public actors,[2] the appellate court held that

---

**2.** The Fifth Circuit stated that "[i]f we were to reach the issue of whether the asserted conspiracy to harass and harm plaintiffs on the evening

in question existed, we would agree with the district court that summary judgment would be

"no dispute exists in the record as to the objective reasonableness of the actions taken by the defendant officers who now appeal. Each state action alleged to have harmed plaintiffs—false arrest, excessive force and denial of medical attention—has been determined to be qualifiedly immune." *Id.* Consequently, the Fifth Circuit did not reach the issue of whether a conspiracy existed to engage in the actions alleged.

IV. Plaintiffs' Remaining Claims

### A. *Plaintiffs' Claims Against the City of Marion*

■ Because the Fifth Circuit rendered judgment for appellants Earl, Faulkner, Boecker, Elliot, and Pearce on the ground that their actions were qualifiedly immune, this Court must vacate its previous order denying summary judgment to the City of Marion and enter judgment in its favor.

Section 1983 provides in relevant part: Every person who under color of any statute, ordinance, regulation, custom or usage, of any state ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, ... secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983. In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a § 1983 action could lie against a municipality only when it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or when "constitutional deprivations [occurred] pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91, 98 S.Ct. at 2035–36; *Collins v. City of Harker Heights*, 916

F.2d 284, 285 (5th Cir.1990). As stated fairly recently by the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the "first inquiry in any case alleging municipal liability under § 1983 is ... whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton*, 109 S.Ct. at 1203. Because the Fifth Circuit found that defendant Earl, the Chief of Police of Marion, and defendants Faulkner and Boecker, Marion police officers, committed no constitutional violations in arresting and processing plaintiffs, there can be no causal link between their actions and any municipal policy or custom of the City of Marion.[3] In this case, the municipality's alleged "agents" have been absolved of constitutional wrongdoing; in the absence of a custom or policy, plaintiffs have no grounds for recovery against the City of Marion.

### B. *Plaintiffs' Claims Against the Railroad Defendants*

■ The remaining plaintiffs, Pfannstiel, Roy Vizza, and Garza have § 1983 claims for false arrest, excessive force, denial of medical care, and conspiracy against the remaining defendants: Skelton, Simons, and the Railroad. Because the Fifth Circuit has ruled (1) that there was probable cause to arrest the plaintiffs; (2) that none of the plaintiffs sustained a "severe" injury within the meaning of *Shillingford;* and (3) that the defendants did not unreasonably deny medical care to the plaintiffs, this Court must render judgment in favor of Skelton, Simons and the Railroad on these claims as well under "the law of the case" doctrine. In so doing this Court vacates its order of August 11, 1989 and grants the Defendants' Motion to Dismiss or for Summary Judgment, filed March 19, 1987.[4]

---

improper because the agreement was disputed." *Pfannstiel*, 918 F.2d at 1188.

**3.** *Monell* precludes the imposition of *respondeat superior* liability upon the City of Marion for the acts of defendants Earl, Faulkner, or Boecker. *Turner v. Upton County*, 915 F.2d 133, 135 (5th Cir.1990).

**4.** The Court must address the standard to be applied in determining whether or not to grant summary judgment. Federal Rule of Civil Procedure 56 provides in pertinent part:

    **Motion and Proceedings [on Summary Judgment].** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day

The sole remaining claim of plaintiffs Pfannstiel, Roy Vizza, and Garza against Skelton, Simons, and the Railroad is grounded in an alleged § 1983 conspiracy. In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel*, 918 F.2d at 1187. Because the Fifth Circuit found that "no dispute exists in the record as to the objective reasonableness of the actions taken by the defendant officers," *id.* at 1188, plaintiffs cannot establish "a deprivation of civil rights in furtherance of the conspiracy" as the appellate mandate requires. This is so even if this Court assumes that plaintiffs have adduced sufficient summary judgment evidence to establish the existence of such a conspiracy. When a § 1983 "conspiracy" works no deprivation of constitutional rights, plaintiffs suing thereon may not recover. Consequently, summary judgment shall be rendered for the defendants on this claim as well.

### V. Conclusion

Accordingly, it is hereby ORDERED that this Court's order of August 11, 1989, is VACATED;

It is FURTHER ORDERED that the Railroad Defendants' Motion To Dismiss or for Summary Judgment, filed March 19, 1987, is GRANTED;

It is FINALLY ORDERED that as all matters pending before this Court have been resolved, this case be DISMISSED WITH PREJUDICE.

of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Defendants, though movants for summary judgment, will not carry the burden of proof at trial as to the issues the Court now faces. Under recent Supreme Court and Fifth Circuit case law regarding summary judgment, the movant need only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Once movant has made this showing, the non-movant must then respond with a specific factual showing that there is a genuine issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123 (5th Cir.1988).

In order to survive a motion for summary judgment, the non-movant must raise a genuine dispute as to a *material* fact. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Genuine disputes over irrelevant, immaterial, or unnecessary facts will not render summary judgment inappropriate. *Id.; Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). In light of the Fifth Circuit's decision above, the Court finds that there is no longer a genuine issue of material facts with respect to the issues discussed herein.