IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20700
_____


PAT BULLARD,

Plaintiff-Appellee,

versus

THE CITY OF HOUSTON, ET AL.,

Defendants,

JOHN MILES; BALDWIN CHIN; KELLY COLQUETTE,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Texas
(CA-H-95-762)
_____

July 2, 1996
Before JOLLY, DUHÉ, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This appeal comes to us from the denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and raises questions of qualified and official immunity. The only record before us is the complaint, which adequately sets out the facts of this case. Very briefly stated, Pat Bullard, who interviewed and

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

videotaped DWI suspects for the Houston Police Department (the "HPD"), alleged in his complaint that the assistant district attorneys--the only appellants in this appeal--did not approve of his truthful testimony at DWI trials, that they attempted to pressure him to testify falsely, that when he refused they complained to his superiors, that he reported the DAs to the state bar, and that he was wrongfully terminated from his civilian job with the HPD for refusing to testify falsely at two DWI trials. He brought various state and federal charges against numerous defendants. These three DAs moved for dismissal of the complaint, claiming qualified or official immunity. The district court denied their motions, and this appeal followed. We hold that Bullard has stated a claim for a violation of his First Amendment rights, but has failed to state a claim for a violation of his substantive due process rights under the Fourteenth Amendment. Furthermore, and particularly in the light that the case comes to us on the barest record as a denial of a 12(b)(6) motion, we affirm the denial of official immunity under state law with respect to the state claims. We therefore affirm in part and reverse in part.

I

Bullard brought this action under 42 U.S.C. § 1983, alleging (1) that he was wrongfully terminated in violation of the First Amendment in retaliation for exercising his right to speak out on

a matter of public concern; (2) that the defendants' actions, along with the actions of other defendants not parties to this appeal, deprived him of both a liberty and a property interest without due process of law in violation of the Fourteenth Amendment; and (3) that the defendants' actions violated the Family Medical Leave Act.[1]  He also asserted pendant state law claims for wrongful termination, defamation, and intentional infliction of emotional distress.  Although Bullard sued the individually named defendants in both their official and personal capacities, the district court dismissed the official capacity suits against Miles, Chin, and Colquette as duplicative of the claims against Harris County. Miles, Chin, and Colquette moved to dismiss the claims against them, pursuant to Rule 12(b)(6).  The district court denied the motion in part and granted the motion in part, as follows:  it allowed all federal claims, as well as the wrongful termination claim against all three defendants, to proceed; it granted all three defendants' motions to dismiss the intentional infliction of emotional distress claims; and it denied Colquette's, but granted Miles' and Chin's motions to dismiss the defamation claim.

This appeal followed.  The primary issues before us today are: (1) whether the district court improperly denied the defendants'

---

[1]The Family Medical Leave Act claim is not at issue in this appeal.

motion to dismiss Bullard's petition for failure to allege facts
sufficient to overcome their qualified immunity defenses; and (2)
whether the district court erred by refusing to dismiss Bullard's
state law claims against the defendants.[2]

---

[2]Before considering the merits, we consider the basis for our
jurisdiction.  We conclude that we have jurisdiction to consider
the appeals of both the state and federal immunity issues.  In
Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411
(1985), the Supreme Court held that "a district court's denial of
a claim of qualified immunity, to the extent that it turns on an
issue of law, is an appealable `final decision' within the meaning
of 28 U.S.C. § 1291 notwithstanding the absence of a final
judgment."  Id. at 530, 105 S.Ct. at 2817.  We conclude that the
denial of a qualified immunity motion at the 12(b)(6) stage, where
the district court must assume that factual allegations are true,
is a "purely legal" denial of qualified immunity.  We thus have
appellate jurisdiction to review the district court's denial of the
three defendant DAs' motion for federal qualified immunity.

We also find that we have jurisdiction over the appeal of the
denial of official immunity under Texas law.  Recently, in Cantu v.
Rocha, 77 F.3d 795 (5th Cir. 1996), we faced a nearly identical
question, and wrote:

> We have previously held that an order denying qualified
> immunity under state law is immediately appealable as a
> "final decision," provided that the state's doctrine of
> qualified immunity, like the federal doctrine, provides
> a true immunity from suit and not a simple defense to
> liability. . . .
>     We are persuaded that Texas law insulates government
> officials from the burden of suit, as well as from civil
> liability for damages. . . .
>     [O]rders premised on the denial of qualified
> immunity under Texas state law are appealable in federal
> court to the same extent as district court orders
> premised on the denial of federal law immunity . . . .

Cantu, 77 F.3d at 803-04 (citations omitted).
    We therefore conclude that we have jurisdiction to hear the
defendants' appeal in its entirety.

-4-

We review the district court's ruling on a Rule 12(b)(6) motion to dismiss de novo.  We accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff.  The plaintiff's complaint should only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief.

Qualified immunity extends to governmental officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  To overcome a qualified immunity defense, the plaintiff must allege facts that, if proved, would demonstrate that the defendants violated clearly established statutory or constitutional rights.  Wicks v. Mississippi State Employment Services, 41 F.3d 991, 995 (5th Cir.), cert. denied, __U.S.__, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995).  A plaintiff may not rest on general characterizations, but must speak to the factual particulars of the alleged actions, "at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of

defendants."  Schultea v. Wood, 47 F.3d 1427, 1431 (5th Cir. 1995)

(en banc).

We analyze the complaint under  the framework presented in

Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277

(1991):

> First, the court must determine whether the plaintiff has
> alleged a violation of a clearly established
> constitutional right.  Id. at 231, 111 S.Ct. at 1792-93.
> If the plaintiff fails this step, the defendant is
> entitled to qualified immunity.  If he is successful, the
> issue becomes the objective legal reasonableness of the
> defendant's conduct under the circumstances.  Anderson v.
> Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 94
> L.Ed.2d 523 (1987).

Baker v. Putnal, 75 F.3d 190, 198 (5th Cir. 1996).

### III

### A

### (1)

The DAs do not contest that Bullard generally asserts a First

Amendment constitutional right to testify truthfully without

interference from state actors.  The district court, however,

further determined that Bullard adequately alleged that these DAs,

along with the other defendants, retaliated against him by

effecting his discharge.  The DAs argue that because they were not

Bullard's employers, and thus had no power to discharge him, they

cannot be held liable for Bullard's termination.  Having reviewed

this circuit's earlier jurisprudence on causation in similar circumstances, we disagree.

In _Professional Ass'n of College Educators v. El Paso County Community College Dist._, 730 F.2d 258 (5th Cir.), _cert. denied_, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984) (_PACE_), a college administrator sued a college president under a First Amendment retaliation theory. The plaintiff alleged that the president suspended him without pay and brought formal charges recommending to the Board of Trustees that he be discharged, because of his formation of the Association of Administrators. The jury found that "a substantial or motivating factor for the discharge of [the plaintiff] was his associational activity," and returned a verdict for the plaintiff. We affirmed, and wrote:

> The causation issue in first amendment cases is purely factual: did retaliation for protected activity cause the termination in the sense that the termination would not have occurred in its absence? It is not necessary that the improper motive be the final link in the chain of causation: if an improper motive sets in motion the events that lead to termination that would not otherwise occur, "intermediate step[s] in the chain of causation" do not necessarily defeat the plaintiff's claim.

_PACE_, 730 F.2d at 266 (quoting _Bowen v. Watkins_, 669 F.2d 979, 986 (5th Cir. 1982)).

The defendants attempt to distinguish _PACE_. They argue that the relationship between the college president and the Board of Trustees was close enough to compel a finding of causation, because

they were members of the same institution and employed by the same entity. They contend that the rationale underlying our decision in PACE was an implicit finding that the school president could not use the Board of Trustees as a shield for a decision made by the Board, but with the president's guidance.

Although there is some force to the defendants' argument, we cannot say, at this early stage in the litigation and with no record evidence yet before us, that here "retaliation for protected activity [did not] cause the termination in the sense that the termination would not have occurred in its absence." Id. Mindful that it was the defendants who chose to raise the qualified immunity claim at the Rule 12(b)(6) stage, and expressing no opinion on Bullard's ultimate ability to prove that some improper motive led to Bullard's firing from the HPD, we conclude that Bullard has adequately alleged a violation of his First Amendment rights.

(2)

Having determined that Bullard has alleged a violation of a clearly established constitutional right, we still must decide if the defendants' conduct was objectively reasonable. Ganther v. Ingle, 75 F.3d 207, 210 (5th Cir. 1996).[3] In this case, taking

---

[3]Qualified immunity shields government officials performing discretionary functions from civil liability, "as long as their actions could reasonably have been thought consistent with the

-8-

Bullard's allegations as true, and viewing them in the light most favorable to Bullard, and finding the constitutional right clearly established at the time of the subject incidents, we cannot say at this point and on this record that the three defendants, as a matter of law, acted with objective legal reasonableness in reacting to Bullard's testimony at the DWI trials.  The gravamen of Bullard's allegation is that, in retaliation for testifying truthfully as to the state of the allegedly drunken defendants, the three DAs set out on a campaign, ultimately successful, to have him terminated from his job with the HPD.  Bullard's allegations in this case are sufficient to withstand 12(b)(6) dismissal, and we affirm the district court's refusal to grant qualified immunity to the defendants at this stage in the litigation.

---

rights they are alleged to have violated." Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

Bullard also argues that "he had a protected property right in employment by the City of Houston by virtue of state law that prohibits termination for refusing to perform an illegal act,"[4] Appellee's Br. at 15. He contends that this state property right is protected under the **substantive** due process clause of the Fourteenth Amendment, and that the DAs deprived him of this property right in the following manner: "Miles, Chin and Colquette provided known false information to the City of Houston which resulted in his termination." Id. at 16. This act, he seems to argue, is so arbitrary and capricious as to amount to a due process deprivation, notwithstanding the subsequent procedural hearing he received from the City of Houston. He makes this argument independent of any procedural due process right that he may have.

Bullard cites no authority to support his theory of this substantive due process rights claim,[5] and does not otherwise develop this argument in any persuasive manner.[6] Although Sabine

---

[4]See Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985) (establishing a narrow public policy exception to Texas' employment-at-will doctrine, providing an entitlement to employment to the extent an employee may not be terminated for refusing to commit an illegal act).

[5]He instead cites several **procedural** due process cases.

[6]Furthermore, even if Bullard had made an original and persuasive argument, it would be difficult to recognize such a substantive due process claim in the light of the Supreme Court's--

may well support an allegation of a property right in this case, Bullard has shown no more than his constitutional entitlement to procedural due process to vindicate that right--a right he does not press as to these three defendants.  Furthermore, the way we are given to understand this vaguely articulated claim, it is no more than a restatement of his First Amendment claim, that is, that the state is prohibited from retaliating against him for testifying truthfully--a constitutional right that we have earlier acknowledged is sufficiently alleged in the complaint.  In any event, whatever substantive due process right that Bullard is attempting to evoke, it certainly was not then or now clearly established.  We therefore reverse the district court's decision that allows Bullard to proceed with his Fourteenth Amendment claims, and the conspiracy claims based on the Fourteenth Amendment claims.[7]

---

and our own--rulings limiting the expansion of substantive due process rights.  See e.g., Albright v. Oliver, 114 S.Ct. 807, 812 (1994) (noting Court's reluctance to expand concept of substantive due process, and that protections of substantive due process have mostly been accorded to matters relating to marriage, family, procreation, and right to bodily integrity); Griffith v. Johnston, 899 F.2d 1427 (5th Cir. 1990) (noting that courts must resist temptation to augment substantive reach of Fourteenth Amendment, particularly if it requires redefining category of rights deemed "fundamental").

[7]Bullard's unsuccessful "Fourteenth Amendment substantive due process claim" may be explained by the confusion surrounding the incorporation of certain of the constitutional amendments to the States.  As we recently explained:

Bullard also alleges that the three defendants were part of a civil conspiracy to violate his constitutional rights. A plaintiff may assert a conspiracy to deprive him of protected constitutional rights under 42 U.S.C. § 1983. Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990). To prevail on such a claim, the plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. Id. If the steps allegedly taken by the official conspirators in furtherance of the alleged conspiracy are objectively reasonable, then the officials are entitled to qualified immunity. Id. at 1188.

Because we have held that Bullard did not allege a cognizable Fourteenth Amendment deprivation claim, his conspiracy claim based on those same facts also collapses. His conspiracy claim arising from and tied to his First Amendment claim, however, survives for

---

The first amendment is made applicable to the states through the fourteenth amendment's due process clause. McIntyre v. Ohio Elections Comm'n, ___U.S.___, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As such, the plaintiffs' first amendment retaliation claim may be characterized as a "substantive due process" claim. See Brennan v. Stewart, 834 F.2d 1248 (5th Cir. 1988).

Rolf v. City of San Antonio, 77 F.3d 823 (5th Cir. 1996).

the same reason the First Amendment claim itself is sufficient to withstand the defendants' motion for 12(b)(6) dismissal.[8]

## IV

Finally, we turn to the state claims.  Texas law allows the affirmative defense of official immunity to be raised where a defendant demonstrates that he has acted in the performance of discretionary duties performed in good faith within the scope of the official's authority.  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  The district court dismissed several of the state law claims against the defendants.  It also upheld the wrongful termination claims against all three defendants.

## A

The defendants first argue that they were entitled to immunity respecting Bullard's claim that they conspired to wrongfully

---

[8]The defendants argue that Bullard has not alleged sufficient specific facts in support of his conspiracy claim.  Bullard responds that he alleged "that there was considerable communication, verbal and written, between the three assistant district attorneys and with members of the Houston Police Department concerning their alleged problems with Bullard and their assertion that he was allegedly incompetent."  We conclude that Bullard has alleged facts from which a jury could infer that Miles, Chin and Colquette, along with the other named defendants, had a common goal--adverse action against Bullard for testifying truthfully and protesting the improper conduct of Miles, Chin and Colquette.  Compare Thomas v. Harris County, 784 F.2d 648, 652 (5th Cir. 1986), cert. denied, 113 S.Ct. 1275 (1993) (allowing conspiracy claim, on allegations similar to those contained in the case at bar, to survive summary judgment).

terminate him from his position with the HPD. While we do not speculate whether Bullard ultimately can prove a wrongful termination claim, we find no error in the district court's refusal to dismiss the claim at this juncture. The Texas Supreme Court has announced that the test of an official's good faith (one of the three elements of official immunity) "is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity . . . ." Chambers, 883 S.W.2d at 656. For the same reasons that led us to conclude that the defendants could not escape Bullard's First Amendment retaliation allegations based on their mere assertions that their acts were objectively reasonable, we also reject their claims for official immunity from the state law wrongful termination claims. Minimal discovery in this case might have led to a different result, but it was the defendants who chose to come quickly to this court on a sparse record, and before they developed all relevant facts.

Similarly, we find no error in the district court's refusal to dismiss the conspiracy claim arising from the wrongful termination. The defendants argue that Bullard has made "no showing under state law that Miles, Chin, and Colquette were part of any civil conspiracy or joint effort to terminate Bullard in violation of his right not to be terminated for refusing to do an illegal act." Bullard, however, is not yet required to make a "showing" of a

conspiracy, to survive the defendants' Rule 12(b)(6) motion. To state a claim for conspiracy under Texas law, he needs only to allege that (1) there was a combination of two or more persons or entities; (2) there was an oral or written agreement among those persons or entities for a common purpose; (3) each of those persons or entities had knowledge of that purpose; (4) each of those persons or entities intended to participate therein; and (5) that one or more overt acts were done in furtherance of the conspiracy. Riquelme Valdes v. Leisure Resource Group, Inc., 810 F.2d 1345, 1351 (5th Cir. 1987). Texas has no "heightened pleading standard," and the Texas Supreme Court has noted that proof of a civil conspiracy may, and usually must be made by circumstantial evidence. See Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corp., 435 S.W.2d 854, 858 (Tex. 1969). Consequently, we find no error in the district court's refusal to grant official immunity on the conspiracy to wrongfully terminate claim at this stage of the proceedings.

B

Although the district court dismissed the defamation claims against Miles and Chin, it refused to dismiss the claim against Colquette. The district court did not consider the adequacy of the defamation claim; it simply refused to dismiss because, unlike the claims against Miles and Chin, the Colquette claim was not barred

-15-

by the statute of limitations. In this case, Colquette briefly and conclusorily argues that her decision to submit the offending affidavit (that it was "common knowledge" among several defense attorneys that they should not stipulate to the videotape whenever Bullard was the PSO because Bullard generally supported their defense), was part of the performance of her discretionary duties, was within the scope of her authority, and was performed in good faith. We have only the pleadings to test this statement against. The pleadings indicate that the letter was knowingly false, and was performed not in any measure of good faith, but instead as a vindictive attempt to have Bullard removed from his job. Whether subsequent discovery can support these allegations with credible evidence is a question that will be answered later in the proceedings on remand. We therefore hold that the district court did not err in its refusal to dismiss the defamation claim against Colquette.

V

**CONCLUSION**

We sum up: we affirm the district court's ruling denying immunity to the three DAs with respect to Bullard's First Amendment claim and related conspiracy claim, but dismiss Bullard's Fourteenth Amendment claim and related conspiracy claim. We affirm the district court's denial of official immunity under Texas law

for wrongful termination as to all three defendants, and affirm the denial of immunity to defendant Colquette for the state defamation claim.

At the oral argument of this case, counsel for the defendants candidly acknowledged that the 12(b)(6) motion in this case was an attempt to "pare down the issues" before trial. Issues might be pared down more effectively, however, if minimal discovery is conducted before the qualified immunity issues are tested.

Based on the foregoing, we REVERSE the district court's refusal to grant qualified immunity to the defendants on the

plaintiff's Fourteenth Amendment claim and the conspiracy claim related thereto, and AFFIRM in all other respects.

REVERSED in part and AFFIRMED in part.