UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond RAMIREZ,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Claude PERPIGNAND,
Defendant-Appellant.

Nos. 84–3690, 84–3691.

United States Court of Appeals,
Fifth Circuit.

June 28, 1985.

George A. Blair, III, (Court-Appointed—not under Act), Rebecca Sawyer, New Orleans, La., (Court-Appointed in 84–3691 for Perpignand), for defendants-appellants.

John P. Volz, U.S. Atty., Peter G. Strasser, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

The instant appeal is the direct result of a thwarted plan to overthrow the government of Haiti.[1] Defendants Raymond Ra-

---

1. The facts of the plan itself are not crucial to the disposition of the instant appeal but are summarized as follows. Ramirez' and Perpignand's thwarted plan began on April 16, 1984, when Ramirez met with John White, a federal informant who held himself out to Ramirez as an influential businessman and trafficker in illegal imports, exports, and illicit drugs. White arranged for Ramirez and Perpignand to meet with Ernie Stein, who was an undercover Customs officer who held himself out to Ramirez and Perpignand as Ernie Stia, a Texas millionaire. After a number of meetings, Stein, Ramirez, and Perpignand reached an agreement whereby Stein would supply the plotters with weapons, secure a training site, provide finan-

mirez and Claude Perpignand were indicted on charges of conspiracy to violate the Neutrality Act (Count 1—18 U.S.C. § 371) [2] and actual violation of the Neutrality Act (Count 2—18 U.S.C. § 960). [3] Both defendants entered conditional pleas of guilty to the substantive offense. [4] Both defendants preserved their right to appeal the district court's denial of the defendants' motions to dismiss the indictments on grounds of selective prosecution. In addition to the selective prosecution claim, the defendants assert on appeal that the district court abused its discretion by refusing to issue certain subpoenas under Fed.R.Crim.P. 17(b). Finding no error, the judgment against each defendant is affirmed.

Ramirez and Perpignand argue that the district court should have granted their motions to dismiss their indictments on grounds of selective prosecution. In denying those motions, the district court found that the defendants had failed to establish a *prima facie* case of selective prosecution. Supp. Record at 31–32. The crux of the defendants' argument is that, allegedly, regular violations of the Neutrality Act take place both at the behest of the present administration and through private individuals and groups. The defendants claim that these Neutrality Act violations are directed against the governments of Cuba and Nicaragua, countries at peace with the United States. The defendants argue that those alleged Neutrality Act violations are not prosecuted because those violations comport with the foreign policy of the present administration. In contrast, the defendants argue, they were prosecuted for their scheme to overthrow the government of Haiti because of their national origin, Haitian, and because of their political views, dissatisfaction with the present government of Haiti. Defendants argue that this discrimination on the basis of their national origin and political views is invidious and demonstrates selective prosecution.

This Court has recently reiterated the heavy burden a defendant must meet to demonstrate selective prosecution.

In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which we have characterized as a "heavy burden." *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir.1978) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)). First, he must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. *United States v. Tibbetts*, 646 F.2d 193,

cial aid and other needed equipment in exchange for favored treatment from the "new" government of Haiti. On May 29, 1984, Ramirez, Perpignand, and eleven other confederates flew to New Orleans from New York in order to begin military training at the selected training site. The next morning, all thirteen defendants were arrested as they were preparing to leave for the camp. The eleven "soldiers" reached various plea agreements, and their appeals are not before this Court. As noted above, Perpignand and Ramirez entered conditional pleas of guilty preserving their rights to appeal the denial of their motions to dismiss on grounds of selective prosecution. Their appeals were consolidated for purposes of oral argument and disposition.

2.  18 U.S.C. § 371 provides in pertinent part:
    *Conspiracy to commit offense or to defraud United States*
      If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency

thereof in any manner or for any purpose, and one or more of such persons [d]o any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3.  18 U.S.C. § 960 provides:
    *Expedition against friendly nation*
      Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined not more than $3,000 or imprisoned not more than three years, or both.

4.  Ramirez was sentenced to three years' imprisonment; Perpignand received a 30 month sentence, with all but six months of the term suspended.

195 (5th Cir.1981). Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. *Id.* The showing of invidiousness is made if a defendant demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination. *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).

*United States v. Jennings,* 724 F.2d 436, 445 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984) (footnote omitted). In *Wayte v. United States,* —— U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), the Supreme Court recognized that a decision to prosecute may not be based on an unjustifiable standard "including the exercise of protected statutory and constitutional rights...." The Supreme Court also stated that a showing of discriminatory purpose required the petitioner to show that " 'the decision-maker ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' " —— U.S. at ——, 105 S.Ct. at 1532, 84 L.Ed.2d at 558 (quoting *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnotes and citations omitted)).

■ This Court holds that the defendants did not meet their evidentiary burden. Accepting only for the sake of argument that other Neutrality Act violations have indeed occurred and were not prosecuted, at most the defendants have demonstrated only the first prong of the test. Defendants still have not met their burden to demonstrate that the prosecution in the instant case occurred "because" they were Haitian or "because of" protected first amendment freedoms. The defendants' conclusional allegations of impermissible motive are not sufficient to meet this burden.

■ The mere existence of some selectivity by the government in instituting prosecutions is not *per se* constitutionally prohibited. *United States v. Hoover,* 727 F.2d 387, 389 (5th Cir.1984). Absent some invidious element, the government's decision to prosecute cannot be challenged. *Jennings,* 724 F.2d at 445 n. 12. The defendants' allegations and evidence of improper motive are insufficient to take this case out of the general rule that prosecutors have wide latitude in determining which cases to prosecute.

As a second argument, the defendants assert that the district court erred in refusing to order the issuance of subpoenas under Rule 17(b) in order that they might present further evidence sufficient to establish selective prosecution.[5] Again, this Court finds no error in the district court's judgments.

Rule 17 provides in pertinent part:

(b) *Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

Fed.R.Crim.P. 17(b). Defendants requested the issuance of a number of subpoenas under Rule 17(b). The district court denied all but one of those requests.[6]

---

**5.** The Government makes the blanket assertion that this issue is not presented by this appeal. Given that the Government has not specified its reasons for this conclusion, this Court addresses the merits of the defendants' claim. Moreover, the Government does not challenge the defendants' assertions that they are financially unable to pay the requested witnesses' fees.

**6.** Subpoenas to the following witnesses were denied: The General Counsel of the Central Intelligence Agency; the Chief of the Internal Security Section of the Criminal Division of the United States Department of Justice; the Legal Advisor to the United States Department of State; the Assistant Attorney General of the Office of Legal Counsel to the United States Department of Justice; John White, the govern-

This Court has generally given district courts wide discretion in determining whether subpoenas should issue under Rule 17(b). As this Court recently stated:

Rule 17(b), Fed.R.Crim.P., governs an indigent's right to have witnesses subpoenaed at Government expense. Of course, the issue is not entirely procedural; it implicates both the sixth amendment right to compulsory process and the fifth amendment protection against unreasonable discrimination based upon the ability to pay. We have long held, however, that, within the limits imposed by the Constitution, "[t]he decision to grant or deny a Rule 17(b) motion is vested in the sound discretion of the trial court." As a threshold matter, an indigent seeking a Rule 17(b) subpoena must allege facts that, if true, demonstrate "the necessity of the requested witness' testimony." The trial court may then exercise its discretion to deny the subpoenas if the Government demonstrates that the indigent's averments are untrue, or if the requested testimony would be merely cumulative or irrelevant.

*United States v. Webster*, 750 F.2d 307, 329–30 (5th Cir.1984) (citations omitted).

 Defendants contend that the district court impermissibly placed the burden on them, a burden they contend rests on the Government. This Court holds that the defendants failed to make the *threshold* requirement necessary to shift the burden to the Government. As this Court has previously stated: "This [threshold] requirement makes total sense in view of the plain language of the rule and the fact that *Rule 17 is clearly not a discovery device.*" *United States v. Hegwood*, 562 F.2d 946, 952 (5th Cir.1977), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978) (emphasis added). *See United States v. Fischel*, 686 F.2d 1082, 1095 & n. 19 (5th Cir.1982).

Defendants make only general allegations regarding the necessity of each witnesses' testimony. This Court perceives the defendants' requests as a "fishing expedition"—an attempt to discover information useful to the defense in order to focus the case away from the conduct of the defendants and on federal foreign policy in general. It is within the district court's discretion to prevent abuse of Rule 17(b). Consequently, the district court did not err in denying the request for the subpoenas. *See United States v. Baechler*, 509 F.2d 13, 15 (4th Cir.1974), *cert. denied*, 421 U.S. 993, 95 S.Ct. 2000, 44 L.Ed.2d 483 (1975) (district court did not err in a selective prosecution case in refusing to issue subpoenas requesting selective service records indicating how many men registered with the Selective Service System in the United States and North Carolina; the number who were prosecuted for failure to register in the nation and in North Carolina; and all records of the Selective Service dealing with non-registration or potential registrants for the years 1973, 1972, 1971 and 1970, because the plaintiff failed to demonstrate that the records were necessary to an adequate defense).

This Court finds no error in the district court's denial of the defendants' motions to dismiss on selective prosecution grounds. Nor does this Court find error in the district court's refusal to issue subpoenas as requested by the defendants. For the reasons stated above, the judgments against Ramirez and Perpignand are

AFFIRMED.

ment informant involved in this case; the custodian of records of WTBJ, Channel 4, Miami, Florida; Ralph McGee; and Jewels Lobel.

In addition to requesting that these witnesses be required to testify at the evidentiary hearing on the motion to dismiss, the defendants made a blanket request for all documents in the possession of each witness that had any connection to this particular case or any other prosecutions under the Neutrality Act in general, as well as documents related to United States foreign policy regarding Nicaragua, Cuba, and Haiti.