The RESOLUTION TRUST CORPORATION as Receiver for Unifirst Bank for Savings, a Federal Savings and Loan Association, Plaintiff

v.

Tom SCOTT, Jr., Defendant.

Civ. A. No. 3:94–CV–159(B)(N).

United States District Court, S.D. Mississippi, Jackson Division.

June 8, 1995.

■

---

Lori Williams Holland, Jackson, MS, and Thomas R. Dyer and Larry H. Montgomery, McDonnell Dyer, Memphis, TN, for Resolution Trust Corp.

Jack F. Dunbar and John H. Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, MS, for Tom B. Scott, Jr.

## OPINION AND ORDER

BARBOUR, Chief Judge.

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Tom Scott, Jr. brings his Motion for Judgment on the Pleadings [30] on four of the five claims for relief asserted against him by Plaintiff Resolution Trust Corporation. The Court, having considered the supporting and opposing memoranda, is of the opinion that the Motion should be granted.

## I. BACKGROUND

The factual background of this case is set forth fully in Opinion and Order of the Court of April 19, 1995, denying the Motion of RTC for Summary Judgment on the counter-claim asserted against it by Scott. Therefore, the Court will not restate that background here.

For the purposes of the present motion, the relevant facts are that RTC has asserted claims for relief against Scott for losses suffered by Unifirst based upon the theories of breach of contract, breach of fiduciary duty, negligence, negligence *per se* and gross negligence. In his Motion for Judgment on the Pleadings, Scott contends that the first four of these claims should be dismissed since, under applicable federal and Mississippi law, the minimum threshold of culpability for which an officer or director of a savings institution can be held liable is gross negligence and these first four theories would allow liability to be imposed on Scott for conduct which does not rise to that level.

## II. JUDGMENT ON THE PLEADINGS STANDARD

By citing various opinions from the federal circuits, the United States Court of Appeals

for the Seventh Circuit has set forth an amalgam of the legal principles applicable to Rule 12(c) motions. Because the Court finds this summary instructive, it reproduces .it here.

> A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989). Therefore, viewing all of the facts in a light most favorable to the non-moving party, *National Fidelity Life Ins., Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987), the district court may only grant the motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief. *Thomason*, 888 F.2d at 1204. The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true. *Flora v. Home Federal Savings and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982). However, the district court may take into consideration the documents incorporated by reference to the pleadings. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985); *see also* Fed.R.Civ.P. 10(c). The district court may also take judicial notice of matters of public record. *See generally Louisiana ex rel. Guste v. United States*, 656 F.Supp. 1310, 1314 n. 6 (W.D.La.1986), *aff'd*, 832 F.2d 935 (5th Cir. 1987), *cert. denied*, 485 U.S. 1033 [108 S.Ct. 1592, 99 L.Ed.2d 907] (1988); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 (Supp.1989).

*United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir.1991).

## III. DISCUSSION

■ The parties agree that 12 U.S.C. § 1821(k) [1] preempts federal common law to the extent such law allows for causes of action against financial institution officers and directors for conduct less egregious than gross negligence. Thus, the four claims at issue in the present motion have no basis in federal law and cannot be brought pursuant to it.

■ Both parties agree that § 1821(k) does not preempt any claims available to RTC against Scott under state law. Scott therefore argues that Miss.Code Ann. § 81–5–105 (Supp.1994) preempts any state law claims that RTC has against Scott based upon the theories now at issue. This provision, passed by the Mississippi Legislature in April of 1994, reads in pertinent part:

> (2) A director or officer of a bank or bank holding company shall not be held personally liable to the corporation or its successor, or the shareholders thereof, for monetary damages unless the director or officer acted in a grossly negligent manner as defined in subsection (5) of this section or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, such as intentional tortious conduct or intentional breach of his duty of loyalty or intentional commission of corporate waste.

> . . . . .

> (4) Notwithstanding any other law to the contrary, the provisions of this section are the sole and exclusive law governing the relation and liability of directors and officers to their bank or bank holding company or their successor, or to the share-

---

1. 12 U.S.C. § 1821(k) reads:

 A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

 (1) acting as conservator or receiver of such institution,

 (2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

 (3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance proved under section 1823 of this title,

 for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the corporation under other applicable law.

holders thereof, or to any other person or entity. The provisions of this section shall be retroactive.

Miss.Code Ann. § 81–5–105.

RTC disputes that Miss.Code Ann. § 81–5–105 operates to bar its claims based upon the four challenged theories. First, RTC contends that the provision applies only to banks and bank holding companies and that Unifirst was neither. Second, RTC contends that the provision, which was enacted after the conduct giving rise to the claims for relief and after the filing of the Complaint, is unconstitutional to the extent that it "purports to retroactively affect accrued rights of Old Unifirst in existence as of August 10, 1989, the date of RTC intervention with respect to Old Unifirst." RTC's Opp. to Def.'s Mot for Part. J. on the Pleadings at 2.

With respect to the first argument of RTC, Miss.Code Ann. § 81–3–1 provides that

Whenever the word "bank" is used in *any* statue, unless the context clearly shows that it is intended to be limited in its application to a particular character of bank, it shall include trust companies, *savings banks,* branches of banks and trust companies, and all other institutions subject to the provisions of this title.

Miss.Code Ann. § 81–3–1 (emphasis added). Clearly, Miss.Code Ann. § 81–3–1 defeats any argument of RTC that, in view of the fact that "Old Unifirst was 'federal association' organized and existing under the laws of the United States of America," RTC Br. in Supp. of Mot. to Strike Defenses at 4, Miss. Code Ann. § 81–5–105 has no application to it. Miss.Code Ann. § 81–3–1 provides that the term bank as used in "any statute" shall include "savings banks." As the rebuttal material submitted by RTC in support of its Motion to Strike Defenses shows, in 1985, Old Unifirst adopted a new federal mutual charter designating Old Unifirst as a "savings bank." Moreover, RTC has presented no argument which persuades the Court that the context of Miss.Code Ann. § 81–5–105 "clearly shows that it is intended to be limited in its application to a particular character of bank." Indeed, by its inclusion in Chapter 5 of Title 81, a Chapter which is titled "General Provisions Relating to Banks and Bank-

ing," it is clear that the scope of applicability of Miss.Code Ann. § 81–5–105 takes in *all* banks, whatever their specific character may be. Accordingly, and notwithstanding the numerous arguments proffered by RTC to the contrary regarding the applicability of the definition of "bank" found in Miss.Code Ann. § 81–3–1, the Court rules that Miss. Code Ann. § 81–5–105 is applicable to the Unifirst entities.

■ The second argument of the RTC, that retroactive application of Miss.Code Ann. § 81–5–105 is unconstitutional, has two specific components. First, RTC argues that retroactive application would conflict with the Supremacy Clause. Second, RTC argues that retroactive application violates due process as that concept is expressed in both the United States and Mississippi Constitutions. Both of these positions are without merit.

With respect to the Supremacy Clause argument, the United States Supreme Court has stated,

[W]here Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law. Such a conflict arises when . . . state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Development Commiss'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983).

■ While it may be true, as the RTC argues, that when Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") its intent was to empower the RTC to pursue any and all rights which a failed institution had with respect to any of its assets, nowhere is there a suggestion that such power equalled a power to *define* what those rights were. Indeed, by including the caveat in 12 U.S.C. § 1821(k) that "[n]othing in this paragraph shall impair or affect any right of the Corporation under other applicable law," Congress was implicitly recognizing that states had the power to define the elements of their various theories of relief and that

Congressional action in the area of federal common law would leave this state authority undisturbed. In the present case, the rights which RTC asserts against Scott are causes of action grounded in state law. It follows, therefore, that under FIRREA the State of Mississippi has the power to define the existence, scope and terminability of those rights.

The clear Congressional policy embodied in § 1821(k) shows that at least insofar as federal law is concerned, liability cannot be predicated on anything less than gross negligence. That Mississippi passed a law which mirrors the policy embodied in § 1821(k) shows that it has acted in a manner which compliments the federal policy. In short, the pre-emption argument of RTC fails because Miss.Code Ann. § 81–5–105 does not stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. at 1722.

 The due process argument of RTC also fails. In order for a party to assert a due process or a takings claim, the party asserting that claim must be asserting a deprivation of a protected property interest. This is so under both federal and Mississippi law. Moreover, it is a cardinal principle of constitutional jurisprudence that property rights are not created by the United States Constitution but instead find their ground in "existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). With respect to Mississippi state law, the Mississippi Supreme Court has stated that a vested property right in a tort action does not arise until "*after* ... [that claim] has been reduced to a judgment." *State v. Ladner,* 512 So.2d 1271 (Miss.1987). In view of such a pronouncement, the Court rules that RTC had no vested right in its tort claims such that the abrogation of those claims by legislative enactment could constitute a deprivation of a property right in violation of due process.

 Finally, the Court notes that the first cause of action stated against Scott and referred to by RTC as a breach of contract action is, in fact, not such an action. Paragraph thirty-one of the Amended Complaint of RTC states that:

By becoming a director and officer of Unifirst, Scott impliedly agreed to administer the business of that entity in a reasonable and diligent manner.

Am.Compl. ¶ 31. Read in the context of the rest of the Amended Complaint, RTC alleges that Scott "breached that agreement" by permitting Unifirst to engage in unwise and ultimately unsuccessful financial transactions. Though this is styled a "breach of contract" claim, in reality, the claim is no more than a claim for negligence or breach of fiduciary duty. As such, it is analogous to, for example, a medical malpractice action which grows out of a contractual duty by a healthcare provider to discharge his obligations in a non-negligent manner. Such an action sounds in tort and not in contract. Therefore, to the extent that it is premised upon a breach of a standard of care that amounts to something less than gross negligence, the RTC "breach of contract" claim is also barred by Miss.Code Ann. § 81–5–105.

In view of the foregoing discussion, the Court grants partial judgment on the pleadings in favor of Scott, dismissing with prejudice the RTC claims for breach of contract, negligence *per se,* ordinary negligence and breach of fiduciary duty based upon a standard less than gross negligence.

SO ORDERED.