Mike SALTS and Marie Salts, individually and as officers of Salts Funeral Home, Plaintiffs

v.

Michael MOORE, Roger Cribb, J.D. Gardner, Tony Lee Shelbourne, Rick Ward, Lee Harrell, Eloise McCraine, George Dale, John Young, Arch Bullard, Travis Childers, Jimmy Moore, Joe Wayne Garner, Roy Green, William L. McKinney, Jerry Barnes, Keith Lovell, Tim Henderson, and Phillip Duncan, professionally, individually, jointly and severally, Defendants.

Civil Action No. 1:99cv263–D–A.

United States District Court,
N.D. Mississippi,
Eastern Division.

June 27, 2000.

Scott W. Weatherly, Jr., Gulfport, MS, K. David Sawyer, K. David Sawyer, LLC, Birmingham, AL, for Mike Salts, Marie Salts.

David Brooks Miller, Mississippi Attorney General's Office, Jackson, MS, for Michael Moore, Roger Cribb, J.D. Gardner, Tony Lee Shelbourne, Rick Ward, Eloise McCraine, Lee Harrell, George Dale.

Geoffrey C. Morgan, Mississippi Attorney General's Office, Jackson, MS, for John Young, Arch Bullard.

Christi Rena McCoy, Langston, Langston, Michael & Bowen, Booneville, MS, Tacey Clark Clayton, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for Travis Childers, Jimmy Moore, Joe Wayne Garner, Roy Green, William McKinney.

Tacey Clark Clayton, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for Jerry Barnes, Keith Lovell, Tim Henderson.

Marc A. Biggers, Upshaw, Williams, Biggers, Beckham & Riddick, Greenwood, MS, for Phillip R. Duncan.

## OPINION

DAVIDSON, District Judge.

Before the court is the motion of Defendants Travis Childers, Jimmy Moore, Joe Wayne Garner, Roy Green, William L. McKinney, Jerry Barnes, Keith Lovell and Tim Henderson, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon due consideration, the court finds that the motion should be granted.

### Factual Background

The facts of this case have been previously outlined by the court. *See Salts v. Moore, et al,* No.1:99cv263–D–A, (N.D. Miss. April 25, 2000). In the interest of convenience, the court will summarize the following facts: Plaintiffs filed the instant action on August 19, 1999, alleging, *inter alia,* constitutional violations under the Fourth and Fourteenth Amendments, violations of the Sherman and Clayton Acts, as well as various other claims arising under 42 U.S.C. §§ 1983 and 1985. Plaintiffs' claims principally arise out of an investigation conducted by the State of Mississippi Attorney General's Office which resulted in the arrest and prosecution of

Plaintiff, Mike Salts, for five counts of making and using false writings and documents with the intent to defraud in order to obtain county funds for "paupers funerals," in violation of Mississippi Code Annotated § 97–7–10. Salts pleaded guilty to all five counts.

At all times relevant to the case at bar, the Defendants presently before the court held the following positions: Travis Childers, Chancery Clerk for Prentiss County, Mississippi; Jimmy Moore, Board Supervisor for Prentiss County, Mississippi; Joe Wayne Garner, Board Supervisor for Prentiss County, Mississippi; Roy Green, Board Supervisor for Prentiss County, Mississippi; William L. McKinney, Board Supervisor for Prentiss County, Mississippi; Jerry Barnes, Police Chief for the City of Booneville, Mississippi; Keith Lovell, Assistant Police Chief for the City of Booneville, Mississippi; and Tim Henderson, Assistant Police Chief for the City of Booneville, Mississippi.

### Discussion

#### A. Judgment on the Pleadings Standard

■ A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Resolution Trust Corp. v. Scott,* 887 F.Supp. 937, 940 (S.D.Miss. 1995) (quoting *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989)). Therefore, viewing all of the facts in a light most favorable to the non-moving party, the district court may only grant the motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief. *Id.* If, however, a required element, a prerequisite to obtaining the requested relief, is lacking in the complaint, dismissal is proper. *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986). The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true. *Resolution Trust Corp.,* 887 F.Supp. at 940 (quoting *Flora v. Home Fed. Sav. & Loan Ass'n,* 685 F.2d 209, 211 (7th Cir.1982)). The court may, however, take into consideration documents incorporated by reference to the pleadings and may take judicial notice of matters of public record. *Resolution Trust Corp.,* 887 F.Supp. at 940 (citing *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985); *State of Louisiana v. United States,* 656 F.Supp. 1310, 1314 n. 6 (W.D.La.1986)).

#### B. Defamation Claims

Plaintiffs contend that from May 1996 through October 15, 1997, Defendants Roger Cribb, J.D. Gardner, Tony Lee Shelbourne, and Rick Ward traveled door to door throughout Prentiss County, Mississippi, informing Plaintiffs' policy holders that benefits through Salts Funeral Home, Northeast Mississippi Burial Association and/or Booneville Burial Association were of no value. These Defendants allegedly held meetings with policy holders at the office of Defendant Travis Childers, where telephone calls were placed to Defendant Eloise McCraine and Katherine O'Keefe. Plaintiffs contend that the nature of these meetings was to deceive policy holders by informing them that Salts Funeral Home was on the verge of going out of business and that the policy holders either did not have coverage or that their policies were no longer in effect with Salts Funeral Home.

Defendants argue that the Plaintiffs' apparent defamation claims are time barred by Mississippi Code Annotated § 15–1–35, which provides a one year statute of limitations for such claims. Plaintiffs respond that they have asserted no state law claims for defamation; rather they purport to allege violations of their federally protected rights pursuant to 42 U.S.C. § 1983.

■ Mississippi Code Annotated § 15–1–35 provides:

All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions

for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

To the extent Plaintiffs are asserting state law claims of defamation for statements made by Defendants on or before October 15, 1997, the date of the Prentiss County grand jury hearing, those claims are time barred and shall be dismissed. *See Wildmon v. Hustler Magazine, Inc.,* 508 F.Supp. 87 (N.D.Miss.1980) (one year period of limitations runs from date defamatory material is published rather than from time statements were discovered).

■ To the extent Plaintiffs are attempting to assert a defamation claim under § 1983, it appears clear that harm or injury to a plaintiff's interest in reputation, even where inflicted by a state or local official, does not result in a deprivation of any "liberty" or "property" recognized by the Fourteenth Amendment or any federal law and, therefore, cannot form the basis of a § 1983 claim. *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976) (States may protect against injury to reputation under tort law.). Accordingly, any defamation claim asserted by Plaintiffs' pursuant to 42 U.S.C. § 1983 is improper and shall be dismissed.

### C. *Claims Arising from Search of Salts Funeral Home*

■ It is undisputed that Mike Salts pleaded guilty to five counts of making and using false writings and documents with the intent to defraud in order to obtain county funds for "paupers funerals," in violation of Mississippi Code Annotated § 97–7–10. Given Mr. Salts' plea, his Fourth Amendment claims, which arise from the search and seizure of certain personal and business effects belonging to Mike and Marie Salts, Salts Funeral

Home, Northeast Mississippi Burial Association and/or Booneville Burial Association, must be examined in light of the Supreme Court's holding in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).[1]

In *Heck,* the Supreme Court addressed actions to recover damages brought under 42 U.S.C. § 1983. The Court stated:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486–87, 114 S.Ct. at 2372 (footnotes omitted).

Based on the principles provided in *Heck,* the Fifth Circuit has similarly held that a § 1983 claim attacking the constitutionality of a conviction or imprisonment does not accrue until that conviction or sentence has been reversed or otherwise terminated in the plaintiff's favor. *Hudson v. Hughes,* 98 F.3d 868, 872 (5th Cir. 1996); *see also Boyd v. Biggers,* 31 F.3d 279, 283 (5th Cir.1994). Only if the court finds that a plaintiff's § 1983 claim, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 claim be allowed to proceed. *Mackey v. Dickson,* 47 F.3d 744, 746 (5th Cir.1995).

Whether a plaintiff's § 1983 claim alleging illegal search and seizure will demonstrate the invalidity of an outstanding

---

**1.** The court's analysis under *Heck* applies only to the claims asserted by Mike Salts. Marie Salts was not prosecuted or convicted of any

crime. Therefore, her Fourth Amendment claims will be addressed separately.

judgment against him is the subject of substantial debate. The Supreme Court stated in footnote seven in its decision in *Heck* that

> a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

512 U.S. at 487 n. 7, 114 S.Ct. at 2373 (internal citations omitted).

Appellate interpretation of footnote seven has resulted in a split among the circuits. The Seventh, Eighth, Tenth, and Eleventh Circuits have held that the Court created a general exception to Heck for § 1983 Fourth Amendment unreasonable search and seizure claims. *See Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 559 n. 4 (10th Cir.1999) (Use of illegally obtained evidence does not necessarily imply an unlawful conviction.); *Copus v. City of Edgerton,* 151 F.3d 646, 648 (7th Cir.1998) (Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid.); *Simmons v. O'Brien,* 77 F.3d 1093, 1095 (8th Cir.1996) (Because harmless error analysis is applicable to admission of a coerced confession, judgment in favor of plaintiff in a § 1983 action will not necessarily demonstrate the invalidity of conviction.); *Datz v. Kilgore,* 51 F.3d 252, 253 n. 1 (11th Cir. 1995) (*Heck* is not a bar to plaintiff's unlawful search claim given such doctrines as inevitable discovery, independent source, and harmless error.).

Conversely, the Second, Sixth, and Ninth Circuits have held that a § 1983 Fourth Amendment claim alleging unlawful search and seizure does not accrue under *Heck* until the criminal charges have been dismissed. *See Harvey v. Waldron,* 210 F.3d 1008, 1015 (9th Cir.2000); *Shamaeizadeh v. Cunigan,* 182 F.3d 391, 399 (6th Cir.1999); *Woods v. Candela,* 47 F.3d 545, 546 (2d Cir.1995).

The Fifth Circuit has not directly addressed this issue. In *Mackey v. Dickson,* 47 F.3d 744, 746 (5th Cir.1995), the court stayed a § 1983 proceeding until the plaintiff's criminal proceeding had run its course to allow a determination of what evidence was presented at the criminal trial. The *Mackey* court instructed that:

> [I]f [the plaintiff] is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his [allegedly unlawful] arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck.*

*Id.* at 746. This approach appears to be somewhat analogous to that of the Second, Sixth, and Ninth Circuits. *But see Brown v. Edwards,* 721 F.2d 1442, 1448 (5th Cir. 1984) ("[T]here is nothing necessarily inconsistent between the arrest being illegal and [the] conviction being proper."). Given the individualized approach taken by the court in *Mackey,* this court must ascertain whether the evidence used to convict Mike Salts was a direct or indirect product of the allegedly unlawful search and seizure of documents and effects from Salts Funeral Home.[2]

Based upon the indictment, it appears to the court that the evidence seized at the search of the funeral home was subsequently used during the criminal proceed-

---

**2.** As previously noted, consideration of a Rule 12(c) motion normally focuses solely on the allegations in the complaint, however, introduction of matters of public record are permissible. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, §§ 1357 n. 41, 1364 n. 24–43 (2d ed.1987). Thus, the court may properly review Salts' indictment.

ings against Mike Salts. Thus, Salts' success in his claims against the Defendants would necessarily draw into question the validity of his conviction or sentence. He must, therefore, demonstrate that his conviction has been invalidated in order for the cause of action to accrue. *See Heck,* 512 U.S. at 486–87, 114 S.Ct. at 2372. He have made no such showing. Accordingly, Mike Salts' Fourth Amendment claims shall be dismissed.

### D. *Qualified Immunity as to Defendants Barnes, Lovell, and Henderson*

Defendants Barnes, Lovell, and Henderson alternatively assert that they are protected from suit by the doctrine of qualified immunity.[3] Given that Mike Salts' unlawful search and seizure claims have been previously addressed, the court will consider the issue of qualified immunity only as it relates to Marie Salts' Fourth Amendment claims.

■ Public officials are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *White v. Walker,* 950 F.2d 972, 975 (5th Cir.1991). The first step in the inquiry of a defendant's claim of qualified immunity is whether the plaintiffs have alleged the violation of a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 230, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). This inquiry necessarily leads the court to the second step of the inquiry, which questions whether the officer acted reasonably under settled law in the circumstances with which he was confronted. *Hunter v. Bryant,* 502 U.S.

224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 434 (5th Cir.1993). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Blackwell v. Barton,* 34 F.3d 298, 303 (5th Cir.1994) (quoting *Pfannstiel v. Marion,* 918 F.2d 1178, 1183 (5th Cir. 1990)). Thus, even if the Defendants violated the Marie Salts' constitutional rights, they are entitled to immunity if their actions were objectively reasonable. *See Blackwell,* 34 F.3d at 303.

Plaintiffs allege that Defendants Barnes, Lovell, and Henderson violated their Fourth Amendment rights to be free from unreasonable searches and seizures by invading and seizing numerous personal effects, office documents and materials from Salts Funeral Home without a search warrant. Neither Plaintiff was at the funeral home when the search occurred.

■ The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. From this constitutional protection, it is well-established that a warrantless search and seizure is unreasonable absent probable cause and exigent circumstances. *See Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995). Defendants submit, and Plaintiffs offer no dispute, that a valid search warrant was issued and executed for the search of Salts Funeral Home. Indeed, Plaintiffs make no allegation that the warrant was improper; rather they offer a blanket assertion that a search warrant was not presented to any officer of Salts Funeral Home.

Assuming Plaintiffs are alleging errors pertaining to the execution of the search

---

**3.** Defendant Barnes contends that he was not present during the search of Salts Funeral Home. Plaintiffs' Second Amended Complaint, however, alleges that Barnes did participate in the search. The court will take Plaintiffs' allegations as true and simultaneously consider the Defendants' eligibility for qualified immunity.

warrant, the Fifth Circuit has explained that Fourth Amendment guarantees must be balanced with the efficient operation of the criminal justice system. *Payne v. United States*, 508 F.2d 1391, 1394 (5th Cir.1975). To this end, there is no legal requirement that owners of property be present when the property is searched, and police officers may lawfully enter unoccupied premises to execute a search warrant. *See id.; United States v. Major*, 915 F.Supp. 384, 387–88 (M.D.Ga.1996). Moreover, failure to present a copy of the search warrant to the party whose premises are searched does not invalidate the search in the absence of a showing of prejudice. *See Walter v. United States*, 447 U.S. 649, 657 n. 10, 100 S.Ct. 2395, 2402, 65 L.Ed.2d 410 (1980) (failure to serve warrant on owner of property does not make execution of warrant unlawful); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Unit B Jan. 1981); W. LaFave, Search and Seizure § 4.5(a) (1987) (serving copy of search warrant ministerial and failure to follow requirements does not void otherwise valid search).

Viewing all of the facts in a light most favorable to the non-movant, the court is of the opinion that the Plaintiffs have failed to allege a violation of a constitutional right. Based on the above authorities, the court concludes that the Defendants' purported failure to present the search warrant to an officer of Salts Funeral Home did not invalidate the warrant and does not give rise to a constitutional violation. Furthermore, the court is of the opinion that even if the Plaintiffs had alleged a violation of clearly established constitutional rights, the acts of the Defendants were objectively reasonable and did not rise to the level of a constitutional violation. *See Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (issue is whether reasonably well-trained officer would have known that affidavit failed to establish probable cause

and that he should not have applied for the warrant). Consequently, Marie Salts' Fourth Amendment claims for unreasonable search and seizure shall be dismissed.[4]

### E. Claims Under 42 U.S.C. § 1985

Defendants correctly argue that a claim under § 1985 is one based upon violation of the right to equal protection of the law. In order to maintain such an action, a plaintiff must first be able to establish "that some racial or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). The Supreme Court has not specifically addressed the scope of the phrase "or perhaps otherwise class-based," but has intimated that gender-based discrimination is sufficient in addition to race-based claims. *Bray*, 506 U.S. at 273, 113 S.Ct. at 761.

In the case at bar, Plaintiffs have made no allegation or reference to any type of class-based animus which would suffice to support an action for conspiracy under § 1985. The court finds that Plaintiffs have failed to allege facts sufficient to state a claim for relief. Accordingly, Plaintiffs' claims in this regard shall be dismissed.

### F. Conspiracy Claims Under § 1983

It is well-established that while plaintiffs may bring conspiracy claims for violation of § 1983, the conspiracy itself is not actionable. *Pfannstiel*, 918 F.2d at 1187; *Brown v. City of Galveston*, 870 F.Supp. 155, 160 (S.D.Tex.1994). Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985, but it may be charged as the legal mechanism through which to impose liability on each and all of the defendants with-

---

4. Had the court not previously determined Mike Salts' Fourth Amendment claims to be

barred by *Heck*, the above analysis would apply with equal force to preclude his claims.

out regard to the specific individual that committed the particular act. *Pfannstiel*, 918 F.2d at 1187 (quoting *Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir.1963)).

■ In order to prevail on a § 1983 conspiracy claim, a plaintiff must show:

1) the existence of a conspiracy that involves state action; and

2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy.

*Pfannstiel*, 918 F.2d at 1187; *Brown*, 870 F.Supp. at 160.

■ Defendants contend that the Plaintiffs' allegations of conspiracy under § 1983 must fail for two reasons. First, they charge that Plaintiffs have failed to establish a violation under § 1983 and therefore, the conspiracy is not actionable. Alternatively, Defendants contend that even if Plaintiffs could establish a claim under § 1983, they are entitled to qualified immunity.

As this court has already found that Plaintiffs have failed to allege a constitutional violation, Defendants correctly argue that Plaintiffs' claims of conspiracy under § 1983 must also fail. *See Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir. 1995); *Pfannstiel*, 918 F.2d at 1187–88. Accordingly, Plaintiffs' § 1983 conspiracy claims shall be dismissed.

### G. Claims Against Defendants in their Official Capacities

■ Plaintiffs have also asserted claims against the Defendants in their official capacities.[5] It is well-settled that a suit against an employee of a local governmental entity in his or her official capacity is, in effect, not a suit against the official but

rather against the official's office. As such, the suit is no different from one against the governmental entity itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (suit against state officer in official capacity is actually suit against state).

■ To hold a municipality accountable for a violation of constitutional rights, a plaintiff must establish: (1) that the municipal employee violated his clearly established constitutional rights with deliberate indifference; and (2) that this violation resulted from an official municipal policy or custom adopted and maintained with objective deliberate indifference. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2035–35, 56 L.Ed.2d 611 (1978); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528–29 (5th Cir.1999).

■ Plaintiffs' Second Amended Complaint contains no allegation of the existence of a custom or policy by which to hold Prentiss County or the City of Booneville liable. To be sure, Plaintiffs' Complaint makes no mention of any custom or policy of illegal searches, false testimony or selective prosecution by the municipalities. Moreover, in their response to the instant motion, Plaintiffs offer no meaningful argument in opposition to dismissal of these claims. Based on the above authorities and the pleadings before the court, Plaintiffs' claims against Prentiss County and the City of Booneville shall be dismissed.

### H. Claims of Selective Prosecution[6]

■ In order to prevail on a claim of selective prosecution, a plaintiff must meet

---

**5.** As noted above, at all times relevant to the case at bar, the Defendants held the following positions: Travis Childers, Chancery Clerk for Prentiss County, Mississippi; Jimmy Moore, Board Supervisor for Prentiss County, Mississippi; Joe Wayne Garner, Board Supervisor for Prentiss County, Mississippi; Roy Green, Board Supervisor for Prentiss County, Mississippi; William L. McKinney, Board Supervisor for Prentiss County, Mississippi; Jerry

Barnes, Police Chief for the City of Booneville, Mississippi; Keith Lovell, Assistant Police Chief for the City of Booneville, Mississippi; and Tim Henderson, Assistant Police Chief for the City of Booneville, Mississippi.

**6.** Defendants correctly note that although both Plaintiffs assert claims for selective prosecution, Marie Salts was not prosecuted for any crime. Thus, she has no standing to

two requirements, which the Fifth Circuit has characterized as a "heavy burden." *United States v. Jennings,* 724 F.2d 436, 445 (5th Cir.1984); *United States v. Ramirez,* 765 F.2d 438, 439 (5th Cir.1985).

> First, he must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. The showing of invidiousness is made if [he] demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination.

*Ramirez,* 765 F.2d at 439–40 (internal citations and footnote omitted).[7]

■ Upon review of the pleadings in the case at bar, this court finds that Mike Salts has failed to allege facts sufficient to establish a prima facie case of selective prosecution. Viewing all of the facts in a light most favorable to the Plaintiff, the court concludes that required elements, prerequisites to obtaining the requested relief, are lacking in the Complaint. Assuming, as Plaintiff contends, that other similarly situated persons fraudulently received paupers funeral funds and were not prosecuted, at best Plaintiff has demonstrated only the first prong of the test. Mr. Salts still falls markedly short of his burden of demonstrating that the prosecution was constitutionally invidious. Conclusory allegations of some unknown impermissible motive are insufficient to meet this burden. *See id.* at 440. Accordingly, Mike Salts' claim of selective prosecution shall be dismissed.

### I. Sherman and Clayton Act Claims

Plaintiffs allege that "each Defendant's conduct was intentional and/or wanton, and committed in efforts to undermine and destroy the Plaintiffs and their businesses in direct violation of applicable antitrust laws...." Second Amended Complaint, Count IV ¶ 84. In addition, Plaintiffs seek to invoke section 4 of the Clayton Act (15 U.S.C. § 15) as a means to recover treble damages, costs, and attorney's fees for the Defendants' alleged violations of the Sherman Act. Plaintiffs offer no indication whether their allegations are brought under section 1 or section 2 of the Sherman Act. The court will therefore address each provision.

#### 1. Section 1 Claims

■ Section 1 of the Sherman Act forbids contracts, combinations, or conspiracies in restraint of trade or commerce. 15 U.S.C. § 1; *Johnson v. Hospital Corp. of Am.,* 95 F.3d 383, 392 (5th Cir.1996). To prevail on a claim under section 1, a plaintiff must show that the defendants 1) engaged in a conspiracy, 2) that produced some anti-competitive effect, 3) in the relevant market. *Johnson,* 95 F.3d at 392. Plaintiffs bear the burden of proving each element of a section 1 violation. *Id.* (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 29, 104 S.Ct. 1551, 1567, 80 L.Ed.2d 2 (1984)); *see also Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984) (plaintiff may not evade pleading requirements by alleging bare legal conclusion; if facts do not at least outline violation of Sherman Act, plaintiffs

---

bring a claim for selective prosecution and any such claim asserted by her shall be dismissed.

7. In *Jennings,* the court emphasized:
 As a substantive matter, the constitutional authority to "take care that the laws [are] faithfully executed" is textually committed to the authority of the executive branch, and the authority of the executive branch to enforce the law in a selective fashion is legally unchallengeable absent proof by the defendant that the government has exercised its discretion upon an invidious basis such as race.
 724 F.2d at 445 n. 12 (internal citations omitted).

will get nowhere merely dressing them up in language of antitrust); *Mover's & Warehousemen's Ass'n of Greater New York, Inc. v. Long Island Moving & Storage Ass'n, Inc.,* No. 98 CV 5373, 1999 WL 1243054, at *3 (E.D.N.Y. Dec.16, 1999) (bare bones statement of conspiracy or of injury under antitrust law permits dismissal).

To satisfy their burden of proving a conspiracy, plaintiffs may rely on either direct or circumstantial evidence. *Johnson,* 95 F.3d at 392. Here, Plaintiffs offer no direct evidence. Rather, their allegations of conspiracy are principally based on a sequence of events initiated by various individuals loosely correlated by proximity of time. Moreover, with respect to the movants, Plaintiffs' allegations of conspiracy relate only to Defendant Travis Childers.

 Plaintiffs' allegations regarding Childers involve alleged policy holder meetings conducted by other Defendants at Childers' office and telephone calls placed by Childers to Defendants Eloise McCraine and Katherine O'Keefe. The court will characterize this as circumstantial evidence. Where a plaintiff relies on circumstantial evidence to prove the existence of a conspiracy, he must proffer sufficient evidence to permit the inference of an antitrust conspiracy. *Id.* In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* the Supreme Court established the governing standard for what constitutes sufficient evidence to permit an inference of antitrust conspiracy:

> a plaintiff ... must present evidence that "tends to exclude the possibility" that the alleged conspirators acted independently.... [I]n other words, [a plaintiff] must show that the inference of conspiracy is reasonable in light of the competing inferences of independent ac-

tion or collusive action that could not have harmed [the plaintiff].

475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

 Applying the above authorities to the instant cause, the court finds that the Plaintiffs have failed to establish that the movants engaged in an antitrust conspiracy. While Plaintiffs submit numerous theories regarding certain other Defendants, the extent of Plaintiffs' antitrust claims against the Defendants presently before the court is minimal.[8] Assuming, as the court must, that meetings were conducted at Childers' office and that he placed telephone calls to other Defendants, the court is unable to ascertain how the challenged acts had an actual adverse effect on competition as a whole in the relevant market. *See Mover's & Warehousemen's Ass'n of Greater New York, Inc.,* 1999 WL 1243054, at * 4 n. 6 (proof that plaintiff has been harmed as an individual competitor will not suffice (citing *Capital Imaging Associates v. Mohawk Valley Med. Associates,* 996 F.2d 537, 543 (2d Cir.1993))). Plaintiffs' allegations offer no proof that the challenged acts had an actual adverse effect on competition as a whole in the relevant market; rather, Plaintiffs' Complaint focuses on allegations that they have been harmed as a individual competitor. Moreover, the proof before the court is notably lacking in evidence tending to exclude the possibility that the Defendants acted independently or that the inference of conspiracy is reasonable in light of the competing inference that these Defendants were carrying out their duties in their respective official capacities.

Furthermore, the court is unable to glean any rational economic motive for the movants to conspire. There is no evidence that any of the Defendants before the court were in competition with Plaintiffs at

---

8. Plaintiffs' conspiracy theory focuses on alleged meetings between Defendants Philip R. Duncan and George Dale, and other meetings conducted by Defendants Rober Cribb, J.D. Gardner, Tony Lee Shelbourne, and Rick

Ward at the office of Defendant Travis Childers. Plaintiffs offer no basis to support their theory that any of the other movants engaged in a conspiracy.

any time prior to or during Mike Salts' arrest and prosecution. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (if claim makes no economic sense and conduct is consistent with other equally plausible explanations, conduct does not give rise to inference of conspiracy). The court is of the opinion that the Plaintiffs have failed to establish any inference of conspiracy with respect to the Defendants. In sum, the court concludes that Plaintiffs have failed to state a claim under section 1 of the Sherman Act upon which relief can be granted and accordingly, that claim shall be dismissed.

*Section 2 Claims*

Section 2 of the Sherman Act establishes a cause of action against single firms that monopolize, or attempt to monopolize, or conspire to monopolize, "any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2; *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.,* 200 F.3d 307, 315 (5th Cir.2000); *C.A.T. Indus. Disposal, Inc. v. Browning–Ferris Indus., Inc.,* 884 F.2d 209, 210 (5th Cir.1989). Although not entirely clear from their Complaint, Plaintiffs appear to be asserting claims of "attempt to monopolize" and "conspiracy to monopolize," rather than a claim of "monopolization." *See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1491 (9th Cir.1991).

■ In order to prevail on an attempt to monopolize claim under section 2, a plaintiff must prove that 1) the defendant has engaged in predatory or anti-competitive conduct with 2) a specific intent to monopolize and 3) a dangerous probability of achieving monopoly power. Unfair or predatory conduct may be sufficient to prove the necessary intent to monopolize. However, intent alone is insufficient to establish the dangerous probability of success, which requires inquiry into the relevant product and geographic market and the defendant's economic power in that market. *Spectrum Sports, Inc. v. McQuil-*

*lan,* 506 U.S. 447, 459, 113 S.Ct. 884, 892, 122 L.Ed.2d 247 (citing *Swift & Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905)). Thus, Defendants may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize.

Although Plaintiffs' Sherman Act claims are vaguely stated at best, it is clear on the facts of this case that no single Defendant before the court engaged in an attempt to monopolize, nor did any one Defendant succeed in singularly monopolizing, the insurance or funeral home markets. Plaintiffs' claims, rather, may be based on the notion that Defendants acted jointly to attempt to monopolize the insurance and funeral home markets. Such is a claim of "conspiracy to monopolize," likewise found under section 2 of the Sherman Act.

■ A conspiracy to monopolize claim can be established only by proof of 1) the existence of specific intent to monopolize; 2) the existence of a combination or conspiracy to achieve that end; 3) overt acts in furtherance of the conspiracy; and 4) an effect upon a substantial amount of interstate commerce. *Stewart Glass & Mirror, Inc.,* 200 F.3d at 316. Such proof is nonexistent here. As our analysis under section 1 demonstrates, Plaintiffs have failed to plead sufficient facts or proffer adequate evidence of any agreement or conspiracy, anti-competitive or otherwise, between the movants. Because a conspiracy to monopolize claim requires joint action, Plaintiffs' deficiencies are fatal to their section 2 claim. Accordingly, Plaintiffs' claims under section 2 of the Sherman Act shall also be dismissed.

A separate order in accordance with this opinion shall issue this day.

This the 27th day of June 2000.

## *ORDER*

Pursuant to an opinion issued this day, it is hereby ORDERED that:

1) Defendants' motion for judgment on the pleadings is GRANTED;

2) Plaintiffs' defamation claims are DISMISSED WITH PREJUDICE;

3) Plaintiffs' Fourth Amendment claims of unlawful search and seizure are DISMISSED WITH PREJUDICE;

4) Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983 and 1985 are DISMISSED WITH PREJUDICE;

5) Plaintiffs' claims against Prentiss County, Mississippi, and the City of Booneville, Mississippi, are DISMISSED WITH PREJUDICE;

6) Plaintiffs' claims of selective prosecution are DISMISSED WITH PREJUDICE;

7) Plaintiffs' claims under the Sherman and Clayton Acts are DISMISSED WITH PREJUDICE; and

8) Plaintiffs' claims against Defendants Travis Childers, Jimmy Moore, Joe Wayne Garner, Roy Green, William L. McKinney, Jerry Barnes, Keith Lovell and Tim Henderson are DISMISSED WITH PREJUDICE.